## A98A1008. TELFAIR v. THE STATE.
### (507 SE2d 195)

RUFFIN, Judge.

A jury found Trinity Telfair guilty of armed robbery. The same jury acquitted his co-defendant, Eloise Burley. Telfair appeals, asserting there is insufficient evidence to support his conviction. Specifically, Telfair contends that his conviction must be reversed because it is based upon the uncorroborated testimony of an alleged accomplice. For reasons which follow, we affirm.

" 'On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the appellant (defendant here) no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) [(1979)]. Conflicts in the testimony of the witnesses, including the State's witnesses, (are) a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.' [Cit.]" *Shabazz v. State*, 229 Ga. App. 465, 466 (1) (494 SE2d 257) (1997).

Viewed in this light, the record shows that on November 22, 1995, two men dressed as women entered the Strawberry Patch store. They were wearing dark-colored wigs, make-up and large, hoop earrings. The owner of the store, Faye Gatliff, testified that the men told a salesperson, Evelyn Dismuke, that "this was a holdup and one of them put a gun to her head. . . ." They then instructed all the people in the store to move behind the jewelry counters while the two robbers removed gold and sterling silver jewelry from the counters. The robbers exited the store through its back door. Gatliff testified that the retail value of the stolen jewelry was approximately $75,000. She did not identify the robbers during her testimony and was never asked to do so.

Paige Whittington, a Strawberry Patch employee who was working at the time of the robbery, also testified for the State. During her testimony, Whittington identified Telfair as one of the robbers. Specifically, Whittington explained that while reviewing mug shots at

the police station after the robbery, she recognized one of the robbers. Although she could not independently identify Telfair as one of the robbers at trial, she testified that she was able to positively identify him as one of the robbers in a previous court proceeding.

One of the robbers, Mark Freeman, also testified for the State in exchange for a lighter sentence recommendation from the State. Freeman explained that the robbery was planned while Burley, Telfair and Freeman were riding in a car driven by Ronald Craig. In order to prepare for the robbery, Freeman, Telfair, Burley and Craig went to the home of Craig's grandmother where Freeman and Telfair changed their appearance to look like women. Burley put make-up on Freeman and Telfair and also helped them put on wigs.

The four then drove to the Strawberry Patch and dropped Burley off in front of the store. Burley went inside the store to "look the place over" and returned to the car. Craig then drove to the home of one of Burley's relatives and Burley went inside. Craig, Telfair and Freeman left Burley at this location and went back to the Strawberry Patch. Craig dropped off Telfair and Freeman in the store's parking lot and they agreed to meet on a side street after the robbery.

According to Freeman, he was armed with a meat cleaver and Telfair was armed with a "little handgun" when they entered the store. When Freeman observed Telfair "grab one of the employees and pull the gun out," Freeman told everyone in the store to lie down on the floor. Freeman and Telfair made all of the store employees lie down inside the jewelry counter area as they took all the jewelry from the showcase. They left the store through the back door, met Craig on the side street and drove away.

Telfair contends this evidence cannot support his conviction because there was insufficient corroboration of his accomplice's testimony. See OCGA § 24-4-8. We disagree. " '[T]he rule that a felony conviction is not to be had on the uncorroborated testimony of an accomplice applies only when the accomplice is the sole witness upon whose testimony the State relies. (Cits.)' . . . *McDaniel v. State*, 158 Ga. App. 320 (279 SE2d 762) (1981). In the instant case, the State introduced evidence *other* than the testimony of [Telfair's accomplice], including evidence of the victim's pre-trial identification of [Telfair] as one of [the robbers]." *Morris v. State*, 204 Ga. App. 437, 438 (2) (419 SE2d 733) (1992). "Slight evidence of a defendant's identity and participation from an extraneous source is all that is needed to corroborate the accomplice's testimony. [Cit.]" *Terry v. State*, 224 Ga. App. 157, 159 (1) (b) (480 SE2d 193) (1996).

We find the evidence in this case sufficient to sustain Telfair's conviction and corroborate his accomplice's testimony. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Terry*, supra; *Morris*, supra.

*Judgment affirmed. Pope, P. J., and Beasley, J., concur.*

DECIDED SEPTEMBER 18, 1998.

*Layne & Layne, Alan P. Layne,* for appellant.
*Richard A. Malone, District Attorney, William S. Askew, Assistant District Attorney,* for appellee.