## A99A1775. SCOTT v. THE STATE.
### (530 SE2d 257)

PHIPPS, Judge.

A jury found Jami Scott and his co-defendant, Jacob Jordan, guilty of burglary, two counts of aggravated assault, and possession of a firearm during the commission of a crime. Scott appeals, challenging the sufficiency of the evidence and the trial court's denial of his motion for a new trial on the bases of ineffective assistance of counsel and prosecutorial misconduct. Because we find no reversible error, we affirm.

On appeal, we view the evidence in a light most favorable to the verdict, and an appellant no longer enjoys a presumption of innocence.[1] We determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*[2] and do not weigh the evidence or determine witness credibility.[3] Conflicts in the evidence are for the jury to resolve.[4]

At trial, the State presented the testimony of B. H., who testified that on March 14, 1997, he heard Scott and Jordan discussing plans to rob his cousin, Henry Patterson. Scott and Jordan asked B. H. to join them. He agreed, although he later claimed he did so only because he was afraid that they would harm him if he refused. B. H. immediately went to Patterson's home to warn him of the planned robbery. But when he arrived, Patterson was on the telephone, and B. H. was not able to warn him.

Patterson testified that on that evening B. H. arrived at approximately 9:00 p.m. and, within moments, two men wearing black clothing and ski masks pushed open his front door. Armed with a baseball bat and a gun, the men ordered B. H. to get on the floor and demanded money from Patterson. When Patterson responded that he had no money, one assailant hit him with the baseball bat, and the other shot him in the chest. Then the two men fled.

Patterson testified that later that night he told an investigator that when the assailants demanded money from him, he recognized Scott's voice. And he told the investigator that it was Scott who hit him with the baseball bat.

Scott's ex-girlfriend testified that shortly after 9:00 p.m. that evening, Scott, wearing black clothing, came to her home and asked her to tell any inquiring police officers that he had been at her house all day because "something had happened cross town." She testified

---

[1] *Patterson v. State*, 225 Ga. App. 515 (484 SE2d 317) (1997).
[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[3] *Patterson*, supra, 225 Ga. App. 515.
[4] Id.

that Scott had not been at her house at all that day before his evening visit.

1. Scott challenges the sufficiency of the evidence, specifically contending it is based on the uncorroborated testimony of B. H., an accomplice. He points out that on the night of the incident, B. H. gave a statement to the investigator, identifying Scott and Jordan as Patterson's assailants. Scott claims that Patterson failed to identify him until after B. H. supplied his name to the investigator.

But the rule that a felony conviction may not be based upon the uncorroborated testimony of an accomplice applies only when the accomplice is the sole witness upon whose testimony the State relies.[5] Here, the State introduced other evidence, including the victim's testimony of his pretrial identification of Scott and the ex-girlfriend's testimony of Scott's attempt to fabricate an alibi. The credibility of Patterson's identification of Scott's voice is bolstered by Scott's testimony that he met Patterson in 1996 and had talked to him on several occasions before March 14, 1997. Such evidence, independently of the accomplice's testimony, directly connects Scott to the crimes.

The evidence is sufficient to support Scott's conviction for burglary, two counts of aggravated assault (with a baseball bat and with a gun), and possession of a firearm during the commission of a crime.[6]

2. Scott contends that the trial court erred in finding that his trial counsel rendered effective assistance. To establish ineffectiveness, an appellant must show that (1) counsel's performance was deficient and (2) the deficiency so prejudiced his defense that a reasonable possibility exists that the trial's outcome would have been different but for that deficiency.[7] We need not address both prongs of this test if the showing on one prong is insufficient, nor must we address them in any particular order.[8] We review a trial court's finding that a defendant has been afforded effective assistance of counsel under the clearly erroneous standard.[9]

(a) Scott complains that trial counsel was ineffective by failing to timely object to the admission of a document, labeled Exhibit 10, on the basis that the State had not previously provided it to the defense. The prosecuting attorney asked B. H. to identify the document. B. H. testified that Scott had written the document and that Scott's sister

[5] OCGA § 24-4-8; *Telfair v. State*, 234 Ga. App. 444, 445 (507 SE2d 195) (1998).

[6] *Jackson*, supra, 443 U. S. 307.

[7] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Etheridge v. State*, 228 Ga. App. 788, 789 (2) (492 SE2d 755) (1997).

[8] *Ponder v. State*, 201 Ga. App. 388, 389 (1) (411 SE2d 119) (1991).

[9] *Smith v. State*, 256 Ga. 483 (351 SE2d 641) (1986).

brought the document to him with instructions for him to copy the document by hand, sign it before a notary public, and take the notarized copy to Scott's lawyer with an explanation that Scott was not involved in the incident. Instead of following those instructions, B. H. gave the document to his mother who gave it to someone "up here at the courthouse." B. H. testified that the document did not depict what actually happened on March 14, 1997. The State sought to introduce the document to show that Scott had attempted to influence B. H.'s testimony. When the prosecuting attorney tendered Exhibit 10 into evidence, Scott's counsel raised a hearsay objection, which the trial court overruled. B. H. read the document to the jury:

> I, [B. H.], submit this statement. . . . On March the 14th 1997, I left Jami Scott . . . [to go] to my cousin's house. . . . When I got to my cousin's house, he let me in, and I sat down on the sofa because he was talking on the phone. Then all of a sudden these two guys came into the house with ski masks on and told us to get down on the floor. So I laid down on the floor while my cousin began to struggle with the guy with the gun. I don't know how Jami Scott's name came up in all of this, but I know that he couldn't have been one of the guys who came into my cousin's house. . . . I'm giving this statement on my own free will, and I will testify that everything I just said in this statement is the truth. Jami Scott was not one of the guys.

Both Scott's and Jordan's attorneys cross-examined B. H., but neither questioned him about Exhibit 10. At the conclusion of B. H.'s testimony and outside the presence of the jury, Scott's counsel moved for a mistrial, or alternatively for a continuance, arguing that the prosecuting attorney did not provide Exhibit 10 in discovery. The prosecuting attorney responded that the document had not been produced because it had been in the investigator's file until the morning of trial. After hearing testimony from the investigator, B. H., and Scott's sister, the trial court noted that the motion was untimely, denied the motion for mistrial, then proceeded with the trial.

Scott maintains that his trial counsel's failure to timely object to the admission of Exhibit 10 on the ground that the State had not previously produced the document rendered his representation ineffective. Even assuming that trial counsel's performance was deficient, Scott has failed to show a reasonable probability that the outcome of his trial would have been any different but for the alleged deficiency in view of the totality of other incriminating testimony provided by the State's witnesses. The trial court's ruling was not clearly erroneous.

(b) Scott complains that trial counsel was ineffective by failing to advise the trial court of improper contact between a juror and the victim. He claims that during the trial he reported to his lawyer that Patterson conversed with a juror but his lawyer did nothing.

At the hearing on the motion for new trial, Scott's sister testified that she saw Patterson and a juror in a "friendly conversation," but testified that the only words she heard were the juror's statement to Patterson, "I'll talk to you later." Scott produced no other evidence concerning the conversation. This statement, without more, fails the prejudice prong of the *Strickland* test. Because Patterson failed to show that the allegedly improper communication prejudiced him, the trial court did not clearly err in finding Scott received effective assistance of counsel.

3. Scott claims that the admission of Exhibit 10 resulted from prosecutorial misconduct and argues that the trial court erroneously denied his motion for new trial. Scott has not shown, and the transcript does not reveal, that he made a timely objection on that basis at trial. Consequently, this allegation of error is not preserved for our review.[10] The contemporaneous objection rule cannot be avoided by characterizing trial occurrences as examples of prosecutorial misconduct.[11]

Moreover, Scott has shown no prosecutorial misconduct. At the hearing on Scott's motion for mistrial, the investigator stated that he did not notify the prosecuting attorney of the existence of the document until the morning of trial. There is nothing in the record indicating otherwise.

*Judgment affirmed. Johnson, C. J., and McMurray, P. J., concur.*

DECIDED MARCH 1, 2000.

*Ellis R. Garnett*, for appellant.

*Daniel J. Craig*, District Attorney, *Charles R. Sheppard*, Assistant District Attorney, for appellee.

---

[10] *Kollman v. State*, 231 Ga. App. 630 (1) (498 SE2d 745) (1998).

[11] *Ledford v. State*, 264 Ga. 60, 67 (18) (a) (439 SE2d 917) (1994); see *Kapua v. State*, 228 Ga. App. 193, 196 (2) (491 SE2d 387) (1997).