A01A0408. WOODS v. THE STATE.
(550 SE2d 730)

JOHNSON, Presiding Judge.

Barron Woods was convicted of aggravated assault and simple battery for offenses committed against his girlfriend. Although he raises nine enumerations of error, Woods' challenges to the convictions fall within three categories: the trial court's allegedly improper admission of similar transaction evidence; its failure to find that the simple battery conviction merged as a matter of fact with the aggravated assault conviction; and its finding that Woods was not denied effective assistance of trial counsel. Because each of Woods' arguments is without merit, we affirm the convictions.

Viewed in a light most favorable to the verdict, the evidence shows that Woods and Ophelia Beasley were in the home they shared when Woods accused Beasley of not wanting him anymore and of seeing another man. When Beasley denied the accusations, Woods grabbed her and put her in a headlock. Beasley told Woods to calm down and let her go, because he was hurting her. He left the house, and she went to bed.

A few hours later, Woods woke Beasley by pulling her, by her hair, into a sitting position. Woods accused her of having been with another man while he was gone. Beasley denied the accusation. Woods straddled her and pushed her back down. He pulled a knife from behind his back, held it to her throat, and said, "I don't know whether to stab you or cut your f—ing head off." Although Beasley was terrified, she managed to calm Woods down. He threw the knife down, cried, then went to sleep.

1. Following a hearing on the admissibility of similar transaction evidence, the trial court allowed the state to introduce such evidence involving two victims. The trial court gave limiting instructions regarding the evidence before the first similar transaction witness testified and again during its general charge to the jury. In three enumerations of error, Woods contends the trial court erred in admitting this evidence.

The first witness, Jannie Williams, testified that about two years earlier, she and Woods were romantically involved and lived together. When Williams broke off the relationship, Woods came by her house to try to reconcile. Williams would not talk to him, so he forced open her screen door, came inside, and started arguing with her. Williams and her sister told Woods to leave Williams alone.

Woods refused, pulled sections of Williams' hair out, and struck her in the forehead with his fist. Williams, who was bloodied about the head, lost consciousness and had to be hospitalized. She suffered a fracture, bruising, and swelling and, at the time of trial, still experienced memory problems as a result of the head trauma. Woods pled guilty to battery and simple battery.

Keesha Albert testified that she dated Woods about five years before the charged incidents occurred and that the two lived together. She testified that on one occasion, Woods came into their room while she was sleeping, straddled her, pulled her hair, and held a knife to her neck. Woods accused Albert of being unfaithful to him and threatened to cut her "into a thousand pieces." The landlord responded to Albert's screams, called police, then ordered them both to leave.

Albert testified that the violence started when Woods threatened her with a knife on a prior occasion. She had gone to church, but Woods did not know where she was. When she returned, he accused her of being out with another man. Woods slapped and choked Albert, then got a knife from the kitchen and threatened to kill her. Another man intervened and stopped the attack. When asked by the prosecutor the number of times Woods threatened her with a knife, Albert replied, "It's been so many that I don't really know." The prosecutor asked if it was "like five? Ten?" At this point, defense counsel objected, stating that the question had been "asked and answered." The trial court sustained the objection.

The state sought to introduce the evidence to show Woods' course of conduct and bent of mind. After the hearing regarding the admissibility of the evidence, the trial court ruled that the evidence would be admitted. Before the first similar transaction witness testified and during the trial court's general charge, the jury was instructed regarding the limited purpose of this evidence.

(a) Woods contends the trial court erred in allowing the admission of similar transaction evidence because the evidence was unduly prejudicial and not introduced for a proper purpose. We disagree.

In order to admit similar transaction evidence, the state must show that (1) the evidence is offered for a proper purpose; (2) sufficient evidence exists that the defendant committed the similar transaction; and (3) there are enough similarities between the other transactions and the charged offense that proof of the former tends to prove the latter.[1] A proper purpose for the introduction of the evidence would be to show motive, intent, plan, identity, bent of mind,

---

[1] *Jones v. State*, 243 Ga. App. 374, 376 (2) (533 SE2d 437) (2000).

or course of conduct.[2] The state urged that it sought to introduce the evidence in order to establish Woods' bent of mind or course of conduct.

The trial court did not err in admitting the similar transaction evidence. The prior acts were sufficiently similar to show Woods' course of conduct or bent of mind to react violently when upset with women with whom he had been intimate. We point out that in cases of domestic violence, prior incidents of abuse against sexual partners are generally more permitted because there is a logical connection between violent acts against different persons with whom the accused had a similar emotional or intimate attachment.[3] Prior acts can show the accused's attitude or mindset (i.e., his bent of mind) as to how sexual partners should be treated.[4] Prior acts can also show an accused's course of conduct in reacting to disappointment or anger in such a relationship, evidencing a pattern.[5] As we noted in *Smith*, domestic violence usually occurs in the privacy of the home and is often difficult to prove.[6] The relevance of the similar transaction evidence in this case, along with the trial court's appropriate limiting instruction regarding the purpose of the evidence, outweighed its prejudicial impact.[7]

(b) Woods asserts that the trial court should not have allowed the state to introduce at trial certain similar transaction evidence which was outside the scope of the evidence which had been ruled admissible at the hearing. He points to Albert's trial testimony that Woods slapped and tried to choke her, hit her, and threatened her with a knife "so many [times] that I don't really know [how many]." He also refers to Williams' nonspecific testimony that Woods had verbally and physically abused her before. Woods urges that these points did not come out prior to the trial court's ruling. We find no error.

At the hearing, the prosecutor informed the trial court what she expected the similar transaction testimony to show. She stated that she expected Albert to testify that: she lived with Woods; he threw an ashtray at her; "there were several incidents involving a knife"; "he would put a knife to her throat and threaten her a lot"; he would threaten to cut her into pieces; he tried to stab her with scissors; and "a few times he would wake her up in the middle of the night with a knife and/or scissors to her throat." Albert's testimony that the inci-

---

[2] Id. at 377 (2).
[3] *Smith v. State*, 232 Ga. App. 290, 295 (1) (501 SE2d 523) (1998).
[4] Id.
[5] Id.
[6] Id.
[7] See *Jimenez v. State*, 228 Ga. App. 668, 669 (492 SE2d 530) (1997).

dents with a knife were too numerous to count is very similar to what the prosecutor predicted the testimony would be. And, as the trial court pointed out, the hitting, slapping, and choking Albert testified to at trial were part of an incident in which Woods threatened her with a knife. Therefore, Albert's testimony came well within the scope of the facts brought up in the similar transaction hearing. It does not appear that Woods was unfairly prejudiced or surprised by Albert's testimony.[8]

As for Williams' testimony, the prosecutor told the court that she expected it to show that Woods struck Williams in the forehead with his fist and that the two had been romantically involved. The prosecutor, Woods argues, had said nothing in the hearing about incidents of prior abuse Woods allegedly inflicted upon Williams.

The challenged testimony came out during defense counsel's cross-examination of the witness. Williams had testified about the day on which Woods struck her. She testified that she and Woods argued that day because she had broken off their relationship. On cross-examination, defense counsel asked Williams if the reason for the altercation was that Woods had "slept with" her aunt. Williams said that the couple had been having problems before that and that the "verbal and physical abuse" was occurring before Woods became involved with the aunt. Woods did not object to the witness' response. Thus, the enumerated error suffers two characteristics fatal to appellate review: (1) error, if any, was induced by Woods; and (2) Woods waived any error by failing to object.[9]

(c) According to Woods, the trial court erred in not giving the jury limiting instructions regarding similar transaction evidence before Albert testified, even though counsel did not request instructions be given at that particular time. There was no error.

Although the trial court did not give limiting instructions immediately before Albert (the second similar transaction witness) testified, it did give such instructions before Williams (the first similar transaction witness) testified. And the trial court gave limiting instructions again in its general charge to the jury. The trial court was not required to do more.[10]

2. Woods claims the trial court erred in authorizing the conviction and sentence of simple battery when it was a lesser included offense of aggravated assault. According to Woods, the simple battery conviction merged as a matter of fact with the aggravated assault conviction. We disagree.

Count 1 of the indictment charged Woods with aggravated

---

[8] See generally *Bean v. State*, 239 Ga. App. 106, 108 (2) (521 SE2d 19) (1999).
[9] See *Randall v. State*, 207 Ga. App. 637, 639 (1) (428 SE2d 616) (1993).
[10] See *Hardeman v. State*, 247 Ga. App. 503, 507 (4) (b) (544 SE2d 481) (2001).

assault, alleging that he "did make an assault on the person of Ophelia Beasley with a knife, an object which, when used offensively against said person, was likely to result in serious bodily injury." Count 2 charged Woods with simple battery, alleging that he "did intentionally make contact of an insulting and provoking nature with the person of Ophelia Beasley."

Woods argues that since the second count does not set forth any details, the jury might have found him guilty of simple battery based on evidence that Woods held Beasley down while he held the knife to her throat. In that case, he contends, the two offenses would have merged.

In determining whether merger occurred, the key question is whether the two offenses are proven with the same facts.[11] Here, the two offenses were proven with different facts. The simple battery charge was proven with evidence that Woods grabbed Beasley and put her in a headlock. The aggravated assault charge was proven with evidence that, a few hours later, Woods awakened Beasley, held a knife to her throat, and threatened to stab her or cut her head off. Thus, the aggravated assault was established by proof of different facts from those which proved the simple battery, and there was no merger.[12] We cannot say that the finder of fact was required to find that Woods committed the simple battery as part of the aggravated assault.[13]

3. In five enumerations of error, Woods urges that trial counsel rendered ineffective assistance.

(a) Woods argues that his trial counsel was ineffective in that she failed to prevent the introduction of evidence of his bad character. He complains of the following incidents:

(i) At trial, the victim testified that she was a medications nurse in the county jail and she met Woods while he was an inmate there. She added that Woods moved in with her upon his release from jail. Defense counsel made no objection to the testimony. Woods has not shown that this failure to object amounted to ineffective assistance of counsel.

Defense counsel testified at the hearing on the motion for a new trial that she decided beforehand that she would not object to any references to Woods having been in jail. First, she expected the fact that he had been in jail to surface when Woods took the stand to testify; she wanted to prepare the jury for that. Second, defense counsel wanted the jury to know that Beasley became involved with a jail

---

[11] *Kellibrew v. State*, 239 Ga. App. 783, 786 (4) (521 SE2d 921) (1999).

[12] See *Dawson v. State*, 203 Ga. App. 146, 147 (2) (416 SE2d 125) (1992); *Clay v. State*, 209 Ga. App. 266, 269 (3) (433 SE2d 377) (1993).

[13] See generally *Bellamy v. State*, 243 Ga. App. 575, 581 (5) (530 SE2d 243) (2000).

inmate and knowingly violated her employer's rules by associating with an inmate and by letting him leave his cell under false pretenses. That evidence, defense counsel believed, would call Beasley's judgment and credibility into question. Defense counsel's decision to allow the testimony was clearly a matter of trial strategy and not grounds for an ineffective assistance of counsel claim.[14]

(ii) Woods asserts that defense counsel should have objected when Albert, the similar transaction witness, testified that she did not know how many times Woods had threatened her with a knife because "it's been so many." We note that Albert had already testified that Woods had threatened her with a knife "more than once," and had related to the jury the details of two such incidents. Even assuming that trial counsel was deficient in not objecting to the "it's been so many" remark, in view of the totality of the other testimony provided by the state's witnesses, Woods has failed to show a reasonable probability that the outcome of his trial would have been different but for the alleged deficiency.[15]

(b) Woods contends trial counsel was ineffective because she failed to object to similar transaction evidence when the state failed to give proper notice of the incidents involving Albert. Specifically, he urges that the notice provided, which included Albert's name, an incident date, and referred to "Simple battery, Simple Assault, other incidents of violence," was not adequate notice of the incidents involving knives.

The record shows that the state served Woods with notice of its intent to introduce evidence regarding Albert on March 14, 2000. The hearing regarding similar transactions and the trial itself were conducted on April 10, 2000. Only ten days notice was required.[16]

The transcript contradicts Woods' argument that trial counsel did not receive adequate notice about the incidents involving the use of knives against Albert. At the hearing on the motion for a new trial, defense counsel testified that she was given notice of the incidents involving Albert. Indeed, she testified that she had access to the state's file and that nothing came out at trial that she was not expecting or did not already know about. Defense counsel testified that she was prepared for all the evidence introduced, including that involving the use of knives against Albert. Thus, even if the state erred in not stating with sufficient specificity what the "other incidents of violence" were, under the facts of this case, any error was wholly harmless in that the intent of the notice rule was fully met.[17]

---

[14] See *Nash v. State*, 222 Ga. App. 766, 767-768 (3) (476 SE2d 69) (1996).

[15] See *Scott v. State*, 242 Ga. App. 553, 555 (2) (a) (530 SE2d 257) (2000).

[16] See Uniform Superior Court Rule 31.1.

[17] See generally *Penaranda v. State*, 203 Ga. App. 740, 743-744 (4) (c) (417 SE2d 683)

(c) Based on the discussions in Division 1, there is no merit to Woods' arguments that trial counsel was ineffective because she failed to object to the introduction of similar transaction evidence when: it was unduly prejudicial and not introduced for a proper purpose; it fell outside the scope of the similar transaction evidence that had been ruled admissible; and the trial court did not give separate limiting instructions before the second similar transaction witness testified.

Since the trial court's finding that Woods was not denied effective assistance of counsel was not clearly erroneous, it must be affirmed.[18]

*Judgment affirmed. Ruffin and Ellington, JJ., concur.*

DECIDED JUNE 22, 2001 — ■■■■■■■■■■■■■

*Lohmeier & Lohmeier, Gregory J. Lohmeier*, for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Candace N. Kicklighter, Assistant District Attorneys*, for appellee.

---

(1992); *Cooper v. State*, 178 Ga. App. 709, 715 (6) (345 SE2d 606) (1986).

[18] See *Harper v. State*, 241 Ga. App. 865, 868 (3) (528 SE2d 317) (2000).