### A03A1709. THOMPSON v. THE STATE.
(595 SE2d 377)

ADAMS, Judge.

James Thompson was convicted by a jury of one count of armed robbery and one count of aggravated assault.[1] He filed this out-of-time appeal following the trial court's denial of his motion for new trial. We affirm.

The evidence showed that on September 12, 1998, Thompson was in the bathroom at a restaurant in College Park when Ted Hornsby came in. Thompson demanded money from Hornsby, but Hornsby told Thompson that he did not have any money. Thompson then put a gun to Hornsby's head and pulled the trigger five times. When the gun failed to fire, Thompson hit Hornsby in the head with the gun. Hornsby received a gash over his right eye and he was knocked unconscious. Thompson then took Hornsby's wallet, which contained $273.

As Thompson tried to leave the restaurant, he was stopped by a cashier who thought he might be trying to leave without paying for a meal. But Thompson explained that he had just used the bathroom. He then left the restaurant with another man and drove away. A customer in the restaurant who observed Thompson and thought that he and his companion were acting strangely wrote down the tag number of his car. Although Hornsby could not identify his attacker, both the cashier and the restaurant customer identified Thompson as the man they saw leaving the restaurant that day.

---

[1] Thompson was also charged with possession of a firearm during the commission of a felony, two counts of possession of a firearm by a convicted felon, theft by taking, one other count of aggravated assault and two counts of armed robbery. The count of possessing a firearm during the commission of a felony was dismissed with the state's consent. The jury deadlocked on the remaining counts, and the state placed them on the dead docket. This opinion will address evidence relating to those counts as necessary.

1. Thompson first argues that the trial court erred in denying him the right to give the final closing argument to the jury. The trial court found that Thompson had lost this right when his trial counsel used witness statements during cross-examination. Thompson contends this was error because his counsel merely used the statements for impeachment purposes and did not introduce them into evidence.

Under OCGA § 17-8-71, if a defendant does not introduce any evidence at trial, other than his own testimony, he retains the right to open and close argument to the jury. See *Williams v. State*, 236 Ga. App. 351, 355 (2) (511 SE2d 910) (1999). But a defendant can lose that right if he introduces portions of a witness's prior written statement into evidence, for purposes other than impeachment:

> If, during cross-examination, a defendant reads portions of a witness's prior written statement unrelated to impeachment, the defendant has effectively introduced evidence that should have been formally offered into evidence, and the defendant loses the right to open and close final arguments. Conversely, if the defendant reads only portions of the prior statement relevant to impeachment, the defendant has not introduced evidence and does not lose the right to open and close.

(Citation and punctuation omitted.) *Thomas v. State*, 262 Ga. App. 492, 495 (2) (589 SE2d 243) (2003).

Here, Thompson's attorney used a number of witnesses' prior statements in cross-examination, but he did not read or direct a witness to read any portion of the statements into the record. Rather, he used the statements to question witnesses about what they had and had not told police at the time of the incident. In one instance, for example, Clifton Hall testified in connection with a separate aggravated assault charge on which Thompson's jury deadlocked. Before asking Hall any questions on cross-examination, Thompson's attorney asked him to read his prior written statement to himself "to refresh your recollection." Hall read the document silently without reading it aloud to the jury. The attorney then had Hall verify the date of the statement and questioned him as to whether he had included any descriptive information — such as height, weight, clothing or complexion — about the man who had allegedly committed the assault. The attorney marked the statement as a defense exhibit for identification purposes, but never introduced it into evidence.

Although Thompson contends that the use of Hall's statement was for impeachment purposes only, we find that trial counsel used the statement for more than mere impeachment. He used it to introduce substantive evidence about what was not included in the writ-

ten document. Hall never testified that he gave a description of the alleged assailant to police. By having Hall read the statement in its entirety, and then testify that it did not contain certain descriptive information, Thompson's counsel introduced new evidence into the record. Courts must examine whether evidence other than a defendant's own testimony was introduced in order "to prevent a defendant from circumventing OCGA § 17-8-71 by presenting evidence in informal or unorthodox ways and then attempting to retain the right to open and close final arguments simply by failing to make a formal motion for the introduction of the evidence." *Aldridge v. State*, 237 Ga. App. 209, 215 (6) (515 SE2d 397) (1999).[2]

The introduction of this evidence was sufficient to constitute a waiver of Thompson's right to present the final closing argument, and we find no error.

2. Thompson next contends that the trial court erred in sentencing him to life without parole because the court failed to exercise its discretion in sentencing him. He argues that a life sentence was not mandatory under OCGA § 17-10-7 (c), because that subsection mandates only that a defendant serve all of whatever sentence a trial court gives in its discretion. Subsection (c) of OCGA § 17-10-7 provides that any person, who has already been convicted of three felonies and then commits another, must serve the maximum time provided in the judge's sentence for the fourth felony without possibility of parole.

But Thompson's sentence is governed not just by subsection (c) of OCGA § 17-10-7. It is also subject to the provisions of subsection (a) of that statute, which provides that the trial judge must impose the maximum sentence upon a defendant who has previously been convicted of a felony and is then found guilty of a subsequent felony. OCGA § 17-10-7 (a). These subsections must be read together. If both apply, the trial court must apply them both. *State v. Jones*, 253 Ga. App. 630, 632 (560 SE2d 112) (2002). And where, as in this case, the maximum penalty for the subsequent felony is life in prison, a trial court has no discretion to probate or suspend any part of that sentence. See OCGA § 17-10-1 (a); *Stone v. State*, 218 Ga. App. 350, 351 (1) (461 SE2d 548) (1995). Therefore, "[i]t follows that when a three-time recidivist commits a fourth felony for which the maximum penalty is life in prison, the trial court lacks discretion to sentence such felon to anything other than a life sentence without possibility of

---

[2] Indeed, Thompson's attorney conceded that he wanted the witness statements admitted into evidence, but he also wished to retain the right to close the final argument. He hoped that his tactics in using the statements would "bait" the prosecutor into introducing them into evidence. The prosecutor subsequently did tender the statements into evidence.

parole." *State v. Jones*, 253 Ga. App. at 632. Accordingly, we find no error in the trial court's sentence.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED FEBRUARY 19, 2004.

*Carl P. Greenberg*, for appellant.

*Paul L. Howard, Jr., District Attorney, Alvera A. Wheeler, Assistant District Attorney*, for appellee.