## A04A2208. NASHID v. THE STATE.
(609 SE2d 106)

PHIPPS, Judge.

A jury found John Renard Nashid guilty of armed robbery, kidnapping, aggravated assault, and possession of a firearm during the commission of a crime. He appeals, arguing that the trial court erred by (1) admitting evidence of another crime that was not sufficiently similar to the charged crimes and (2) failing to redact from his taped conversations with the police statements that reflected poorly on his character. We find no error and affirm.

On appeal from a criminal conviction, the defendant no longer enjoys a presumption of innocence, and we view the evidence in the light most favorable to the verdict.[1] So viewed, the evidence shows

---

that on the evening of October 3, 2000, a man entered the Family Dollar Store in Forrest Mart Shopping Center in Douglasville, pointed a gun at the manager and another employee, and demanded money from the cash registers. After the manager gave him money, the man ordered both employees to the back of the store. The manager complied, but the other employee fled to a nearby bar and called the police. The gunman exited the store, and moments later a patron and an employee at the bar saw a maroon Ford Expedition speed away from the shopping center parking lot.

Shortly thereafter, Douglas County Sheriff's Deputy Dwayne Taylor saw a maroon Ford Expedition headed eastbound on I-20, followed it for a short distance, and then turned on his car's flashing lights and siren. The Expedition eventually pulled over, and Taylor "saw a gun come out of the passenger side." Taylor ordered the driver to show his hands, but the Expedition sped off. Taylor pursued it, and the vehicles "approached speeds of 100 miles an hour or more." The Expedition wove in and out of traffic, drove in the emergency lane, cut in front of a tractor-trailer, made a U-turn across the median, and then drove the wrong way on I-20 and exited the highway on an entrance ramp. Taylor followed the Expedition to a warehouse parking lot, where he lost sight of it for a few moments. During that time, a truck driver in the parking lot saw a man jump from the passenger side of the Expedition, crawl under a trailer, and walk away.

The Expedition then sped from the parking lot and began driving in reverse, with the flow of traffic, down a surface street. Taylor followed as the Expedition switched directions and drove forward toward oncoming traffic, ran a stop sign, made a series of U-turns, and eventually returned to I-20 eastbound. At this point, multiple law enforcement vehicles were in pursuit. The chase continued at high speeds, with the Expedition again weaving and using the emergency lane. Finally, the Expedition exited the interstate and crashed into a parked car. The driver — whom Taylor later identified as Nashid — exited the Expedition and ran toward nearby woods. Taylor followed, but Nashid jumped a fence and escaped.

The Expedition had been leased by Nashid and Donald Jackson. Jackson testified that on the evening of October 3, Nashid called him and said "that he had been carjacked, tied up, beat up, robbed, put in the floorboard of his car, [and] kicked out along the expressway" by two unnamed attackers, one of whom he knew. Nashid said that he was in a wooded area and asked Jackson to come get him. On his way to pick up Nashid, Jackson passed the Expedition surrounded by police cars near an interstate exit. When Jackson reached Nashid, Nashid showed "no signs of physical abuse" and still had his cell phone and some money, despite his claim of having been robbed.

Jackson drove Nashid to a pay phone, where he called 911, and then took him home to his wife in Tucker.

Two days later, Nashid called Detective J. R. Davidson of the Douglasville Police Department in an effort to retrieve his Expedition from police custody. Nashid related the story of his alleged carjacking, escape, and 911 call. Nashid said that after calling 911, he took a MARTA train to the Avondale Station and then "crashed out" with "some little . . . ho" he had met on the train in a hotel near the DeKalb County jail. Nashid also said, "[My wife] probably wants to know about the girl I was with." On October 9, Nashid again related his story to Davidson. This time, he said that the woman he spent the night with was "just a little piece of shit girl" and "a hooker or something" and that he was "trying to move away from [his] wife."

Inside the Expedition, police found a cell phone belonging to Nashid's co-defendant, Browrick Reese. A Family Dollar employee identified Reese as the gunman from a photographic lineup.

At trial, the state presented similar transaction evidence of a 1993 bank robbery in New York City. A teller at the bank testified that a man draped in a sheet entered the bank, forced the assistant manager to let him through to the teller's side of the bank, and stole money from several tellers. The man then left the bank and drove away. Sergeant Christopher Napolitano of the New York City Police Department testified that he followed the man's car as it ran a red light, went the wrong way down one-way streets, drove on the sidewalk, swerved, drove at other cars, made a U-turn, and eventually drove onto a parkway, where the driver began throwing money out the window. The driver then exited the parkway, drove over a grassy area in a park, and headed the wrong way up a ramp to I-95. Forced to stop because traffic was at a standstill, the driver exited the car, fled on foot, and eventually was caught and arrested. Napolitano testified that the chase involved numerous police officers, a SWAT team, and police helicopters. He identified Nashid as the driver of the car.

1. Nashid argues that the trial court erred by admitting evidence of the New York bank robbery because it was not sufficiently similar to the charged crimes. Evidence of a similar offense is admissible if the state shows that (1) the evidence serves an appropriate purpose; (2) the defendant committed the other offense; and (3) the other offense is sufficiently connected to the charged offense such that proof of the former tends to prove the latter.[2] We review for abuse of discretion a trial court's decision to admit evidence of a similar

---

[2] *Gibson v. State*, 268 Ga. App. 696, 697 (2) (603 SE2d 319) (2004).

offense.[3]

The state offered the evidence of the New York robbery to show Nashid's course of conduct and identity, both of which are acceptable purposes for the admission of similar transaction evidence.[4] There was no dispute that Nashid committed the New York robbery. And, although he argues otherwise, there was sufficient similarity between the New York offense and the charged offenses such that proof of the former tended to prove the latter. "The proper focus is on the similarity, not the differences, between the separate crime and the crime in question."[5] Moreover, the separate crime need not be identical to the charged crime to be admissible.[6] Both the New York robbery and the charged crimes concluded with dangerous vehicle chases in which the getaway driver drove erratically, imperiling the lives of others on the road, in an effort to elude the police. The drivers in both cases performed such maneuvers as frequent U-turns, darting through traffic, and driving toward oncoming vehicles. In light of these strikingly similar police chase finales, the trial court did not abuse its discretion in admitting evidence of the New York robbery.

2. Nashid contends that the court erred by failing to redact from the tapes of his conversations with Davidson certain comments that reflected poorly on his character and showed that he had committed uncharged crimes. In particular, he points to his statements to Davidson that he spent the night with "some little ho" and a "piece of shit girl," despite the fact that he is married. Nashid argues that in addition to showing bad character, these statements are admissions of fornication and adultery under Georgia law.[7]

"[N]o evidence of general bad character . . . shall be admissible unless and until the defendant shall have first put his character in issue."[8] Evidence that is relevant to an issue in the case, however, is not rendered inadmissible because it incidentally puts the defendant's character in issue.[9] We review a trial court's decision to admit evidence for abuse of discretion,[10] and we find no abuse here. Nashid's statements that, after calling 911, he took a MARTA train to the Avondale station and then spent the night with a woman he met on the train were inconsistent with the testimony of his friend, Jackson,

---

[3] Id.

[4] See *Woods v. State*, 250 Ga. App. 164, 165-166 (1) (a) (550 SE2d 730) (2001).

[5] (Citation and punctuation omitted.) *Williams v. State*, 264 Ga. App. 115, 117 (2) (589 SE2d 676) (2003).

[6] Id.

[7] See OCGA §§ 16-6-18; 16-6-19.

[8] OCGA § 24-9-20 (b).

[9] *Walraven v. State*, 250 Ga. 401, 407 (4) (b) (297 SE2d 278) (1982); *Parrish v. State*, 237 Ga. App. 274, 281 (6) (514 SE2d 458) (1999).

[10] *Parrish*, supra.

that he drove Nashid home to his wife after Nashid called 911 that night. Thus, the statements were relevant because they tended to prove that Nashid had given a false account to the police.[11] That the statements incidentally placed his character in issue did not render them inadmissible.[12]

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED DECEMBER 9, 2004 —
RECONSIDERATION DISMISSED JANUARY 6, 2005 — 

*Mary Erickson*, for appellant.
John R. Nashid, *pro se.*
*David McDade, District Attorney, James E. Barker, Christopher R. Johnson, Assistant District Attorneys*, for appellee.

---

[11] See *Height v. State*, 214 Ga. App. 570, 571 (1) (448 SE2d 726) (1994) (evidence reflecting poorly on defendant's character was admissible to show "the falsity of his specific testimony").
[12] See *Mullinax v. State*, 273 Ga. 756, 760 (3) (545 SE2d 891) (2001).