## A07A1511. BRYANT v. THE STATE.
### (649 SE2d 597)

BLACKBURN, Presiding Judge.

Following a jury trial, Sheldon Bryant was convicted on one count each of armed robbery,[1] kidnapping,[2] aggravated assault,[3] burglary,[4] carrying a concealed weapon,[5] and forgery.[6] He appeals his convictions and the denial of his motion for new trial, (1) challenging the sufficiency of the evidence and contending that the trial court erred in (2) admitting into evidence his videotaped custodial statements to the police; (3) charging the jury that it could consider the level of certainty demonstrated by an eyewitness in her identification of him; (4) violating the rule of sequestration; (5) failing to charge the jury that it could consider that a witness was not sequestered when determining credibility; and (6) imposing the maximum sentence upon Bryant as a recidivist. For the reasons set forth below, we affirm.

1. We first address Bryant's contention that the evidence was insufficient to support his convictions. "On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict, and [Bryant] no longer enjoys a presumption of innocence." *Berry v. State*.[7] "When evaluating the sufficiency of the evidence to support a conviction, we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged

---

[1] OCGA § 16-8-41 (a).

[2] OCGA § 16-5-40 (a).

[3] OCGA § 16-5-21 (a) (2).

[4] OCGA § 16-7-1 (a).

[5] OCGA § 16-11-126 (a).

[6] OCGA § 16-9-1 (a).

[7] *Berry v. State*, 274 Ga. App. 831 (1) (619 SE2d 339) (2005).

offenses beyond a reasonable doubt." *Adams v. State.*[8] See *Jackson v. Virginia.*[9]

So viewed, the evidence shows that on the morning of November 15, 2001, Rebecca Kaufmann was sleeping in her apartment when she was awakened by the sound of someone tapping on her window. Less than a minute or so later, she heard someone knocking on the outer door of the common entry-way of her apartment building, followed by the sound of that door being opened. A few seconds later, someone began loudly pounding on the door to her apartment. Before Kaufmann could call for help, her door crashed open, and Bryant, a stranger to Kaufmann, entered her apartment. Kaufmann jumped out of her bed and began screaming at Bryant to leave. However, Bryant pulled out what appeared to be a knife, told Kaufmann that he was looking for something to steal, and threatened to hurt Kaufmann if she did not comply with his demands. He then pushed her in the chest and ordered her into her bedroom closet. A few minutes later, as Bryant was rifling through her possessions, Kaufmann left the closet to reach a nearby telephone, but before she was able to do so, Bryant ripped the telephone off the wall and again threatened her with the weapon he was carrying, ordering her back into the closet. Shortly thereafter, Bryant took Kaufmann's camera and directed her to remain in the closet for five minutes while he escaped. Kaufmann complied, but once she was certain Bryant had left, she ran to a nearby friend's apartment and called the police.

Later that evening, after spending most of her day speaking with the police about the incident and having her door replaced, Kaufmann decided to go out with a couple of friends. On their way out, they first drove to a nearby gas station so that one of her friends could purchase cigarettes. While she and her other friend waited in the car, Kaufmann noticed a panhandler asking another of the gas station's patrons for change. As her friend who had gone inside the station's store returned, the panhandler asked him for change and followed him toward the car. At this point, Kaufmann recognized the panhandler as the same man who had robbed her that morning. Possibly realizing that Kaufmann had recognized him, Bryant turned and began quickly walking in the other direction. Using her friend's cellular telephone, Kaufmann called the police while she and her friends followed Bryant in their car.

Within a few minutes, the police arrived and arrested Bryant based on Kaufmann identifying him as the man who had robbed her.

---

[8] *Adams v. State*, 282 Ga. App. 819, 820 (1) (640 SE2d 329) (2006).
[9] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

Bryant was searched and was found to be carrying a sharp letter opener. At the police station, Bryant was informed of his *Miranda* rights and responded that he was willing to speak without an attorney present. Upon being asked to give his name by an investigating detective, Bryant responded, "Michael Will." When he also signed the Waiver of *Miranda* Rights form as "Michael Will," the detective confronted him with the fact that he had provided a false name, and that the detective knew his real name.

Bryant was indicted and found guilty on all counts of the indictment following a jury trial. Because he was found to be a recidivist, the trial court sentenced him to life in prison, which was the maximum sentence for an armed robbery conviction. Bryant filed a motion for new trial, which was denied, and this appeal followed. He first contends that the evidence was insufficient to support his convictions.

(a) OCGA § 16-7-1 (a) provides in pertinent part that "[a] person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another. . . ." Under OCGA § 16-8-41 (a), "[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." "[A] conviction for armed robbery may be sustained even though the weapon itself was neither seen *nor accurately described* by the victim." (Emphasis supplied.) *Houston v. State.*[10] In addition, OCGA § 16-5-21 (a) (2) provides that "[a] person commits the offense of aggravated assault when he or she assaults: . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury. . . ."

Here, the evidence showed that Bryant was identified by Kaufmann as the person who broke down the door to enter her apartment, threatened to harm her with a sharp, knife-like letter opener unless she complied with his demands, and stole her camera before fleeing. Thus, there was sufficient evidence to support Bryant's convictions on the counts of burglary, armed robbery, and aggravated assault. See *Brigman v. State*;[11] *Houston*, supra, 267 Ga. App. at 386 (1) (a); *Scott v. State.*[12]

---

[10] *Houston v. State*, 267 Ga. App. 383, 385 (1) (a) (599 SE2d 325) (2004).

[11] *Brigman v. State*, 282 Ga. App. 481, 484 (1) (639 SE2d 359) (2006).

[12] *Scott v. State*, 242 Ga. App. 553, 554 (1) (530 SE2d 257) (2000).

(b) OCGA § 16-5-40 (a) provides that a "person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will." "The distance which a kidnapper abducts his victim is without legal significance under Georgia law. Only the slightest movement of the victim is required to constitute the necessary element of asportation." (Footnote omitted.) *Boykin v. State*.[13] Here, the evidence showed that after Bryant broke into Kaufmann's apartment, he twice forced her from one room into her bedroom closet. Thus, there was sufficient evidence to support Bryant's conviction on the count of kidnapping. See *Austin v. State*[14] (evidence that defendant moved victim from bathroom to closet sufficiently supported kidnapping conviction); *Boykin*, supra, 264 Ga. App. at 839 (1) (evidence that defendant moved victim from inside of vehicle to the ground outside of vehicle sufficiently supported kidnapping conviction).

(c) The offense of carrying a concealed weapon is defined by OCGA § 16-11-126 (a) as when a person "knowingly has or carries about his or her person, unless in an open manner and fully exposed to view, any bludgeon, metal knuckles, firearm, knife designed for the purpose of offense and defense, or *any other dangerous or deadly weapon or instrument of like character* outside of his . . . home or place of business. . . ." (Emphasis supplied.) In this matter, the evidence showed that when Bryant was searched upon his arrest after being identified by Kaufmann, he was found to be carrying a letter opener with a sharp point. It was a jury question whether this letter opener met the definition of a weapon under the statute. See *Dorsey v. State*;[15] *Oliver v. State*.[16] Accordingly, there was sufficient evidence to support his conviction on the count of carrying a concealed weapon. See *McCarty v. State*.[17]

(d) Forgery in the first degree is a felony under OCGA § 16-9-1 (a), which provides in part that "[a] person commits the offense of forgery in the first degree when with intent to defraud he knowingly makes . . . any writing in a fictitious name. . . ." Here, the evidence demonstrated that while in custody, Bryant signed the Waiver of *Miranda* Rights form as "Michael Will," and that he only provided police with his actual name after being told that the police were aware

---

[13] *Boykin v. State*, 264 Ga. App. 836, 839 (1) (592 SE2d 426) (2003).

[14] *Austin v. State*, 286 Ga. App. 149, 151 (1) (648 SE2d 414) (2007).

[15] *Dorsey v. State*, 212 Ga. App. 830, 831 (2) (442 SE2d 922) (1994).

[16] *Oliver v. State*, 106 Ga. App. 493, 494 (127 SE2d 325) (1962).

[17] *McCarty v. State*, 269 Ga. App. 299, 302 (2) (603 SE2d 666) (2004).

of his deception. Accordingly, there was sufficient evidence to support Bryant's conviction on the count of first degree forgery. See *Quaweay v. State.*[18]

2. Bryant contends that the trial court erred in admitting into evidence videotaped statements relating to the forgery charge that he made while in police custody. We disagree.

> In determining the admissibility of a statement, a trial court must find by a preponderance of evidence that the statement was made knowingly and voluntarily. Unless clearly erroneous, factual and credibility determinations made at a *Jackson-Denno* hearing must be accepted by appellate courts.

(Citation omitted.) *Wallace v. State.*[19]

Bryant specifically claims that he did not knowingly and voluntarily waive his *Miranda* rights because at the time he was questioned by the police, he was tired from not sleeping in over 24 hours and was under the influence of cocaine. At the *Jackson-Denno* hearing, the interrogating detective testified that although Bryant appeared to have been awake for a while, he did not appear intoxicated and was coherent. The detective also testified that Bryant agreed to answer questions without an attorney after being informed of his *Miranda* rights, and that Bryant agreed to do so without promise of benefit or threat. The detective further testified that Bryant appeared to understand his rights and the questions being asked. Based on this testimony and the viewing of the videotape, the trial court concluded that Bryant's statement was freely and voluntarily made. Under the circumstances of this case, "we find that the trial court was authorized to conclude that, despite [Bryant's] possible intoxication, he gave a voluntary statement and made a knowing and intelligent waiver of his *Miranda* rights." (Punctuation omitted.) *Adams v. State.*[20] See *Duran v. State.*[21] Accordingly, the trial court did not err in admitting Bryant's videotaped custodial statements into evidence.

3. Relying on our Supreme Court's decision in *Brodes v. State,*[22] Bryant contends that the trial court committed reversible error by charging the jury that the level of certainty demonstrated by an eyewitness in her identification of a defendant is a factor the jury may consider in evaluating the reliability of the eyewitness. But the record reflects that Bryant requested that the trial court give the charge he

---

[18] *Quaweay v. State*, 274 Ga. App. 657, 658 (618 SE2d 707) (2005).
[19] *Wallace v. State*, 267 Ga. App. 801, 807 (6) (600 SE2d 808) (2004).
[20] *Adams v. State*, 276 Ga. App. 319, 322 (3) (623 SE2d 525) (2005).
[21] *Duran v. State*, 274 Ga. App. 876, 879 (2) (619 SE2d 388) (2005).
[22] *Brodes v. State*, 279 Ga. 435, 442 (614 SE2d 766) (2005).

now claims was erroneous. "The act of requesting an instruction in the trial court constitutes a specific waiver of the right to enumerate it as error on appeal. Because [Bryant] induced the giving of the charge below, he is precluded from attacking it now." (Citation and punctuation omitted.) *Inman v. State*.[23]

4. Bryant contends that the trial court committed error when it allowed the investigating detective, who was a witness in the case, to remain at the prosecutor's table throughout the trial after the rule of sequestration had been invoked. However, "[Bryant] made no objection at trial to the detective's presence in the courtroom and has thus waived the instant claim of error on appeal."[24] *Forde v. State*.[25] See *Hood v. State*.[26]

5. Bryant claims that the trial court erred in failing to charge the jury that it could consider that a witness (the investigating detective) was not sequestered when determining that witness's credibility. However, Bryant did not request that the trial court charge the jury with this instruction. "In the absence of a timely request, the trial court did not err in failing to instruct the jury on the credibility of a witness who has heard the testimony of other witnesses." *Dunbar v. State*.[27] Accordingly, this enumeration of error is without merit.

6. Bryant further contends that the trial court erred by imposing the maximum sentence (life imprisonment) for armed robbery, arguing that the trial court should have exercised its discretion in imposing sentence. We disagree.

Here, during the sentencing hearing, the State introduced evidence of Bryant's prior felony conviction in aggravation of sentence. Because of this prior felony conviction, the trial court imposed the maximum sentence for armed robbery upon Bryant, which was life in prison. See OCGA § 16-8-41 (b). Under OCGA § 17-10-7 (a), "the trial judge must impose the maximum sentence upon a defendant who has previously been convicted of a felony and is then found guilty of a subsequent felony." *Thompson v. State*.[28] "And where, as in this case, the maximum penalty for the subsequent felony is life in prison, a trial court has no discretion to probate or suspend any part of that

---

[23] *Inman v. State*, 281 Ga. 67, 69 (2) (635 SE2d 125) (2006).

[24] In fact, the record shows that Bryant was specifically asked by the trial court whether he objected to the investigating detective remaining in the courtroom, and Bryant responded that he did not.

[25] *Forde v. State*, 277 Ga. App. 410, 412 (2) (626 SE2d 606) (2006).

[26] *Hood v. State*, 266 Ga. 662, 663 (2) (470 SE2d 235) (1996).

[27] *Dunbar v. State*, 209 Ga. App. 97 (1) (432 SE2d 829) (1993).

[28] *Thompson v. State*, 265 Ga. App. 696, 698 (2) (595 SE2d 377) (2004).

sentence." Id. See *Stone v. State.*[29] Accordingly, Bryant's claim that the trial court should have used its discretion in imposing sentence is without merit.

*Judgment affirmed. Ruffin and Bernes, JJ., concur.*

DECIDED JULY 10, 2007.

*Richard M. Darden*, for appellant.
*Spencer Lawton, Jr., District Attorney, Kimberly Rowden, Assistant District Attorney*, for appellee.

---

[29] *Stone v. State*, 218 Ga. App. 350, 351 (1) (461 SE2d 548) (1995).