**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 6, 2014**

# In the Court of Appeals of Georgia

A13A2071. MCNEAR v. THE STATE.

BOGGS, Judge.

Alphonso McNear was indicted for malice murder, but a jury found him guilty of the lesser-included offense of voluntary manslaughter. On appeal, McNear contends that insufficient evidence supports his conviction, that the trial court committed various errors, and that he received ineffective assistance of counsel. For the reasons explained below, we affirm.

1. When reviewing the sufficiency of the evidence,

the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.

(Citations and footnote omitted; emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

So viewed, the record shows that on October 30, 2009, around 4:00 a.m., a police officer was called to McNear's home, where EMS personnel expressed concerns "about a suspicious dead body," identified as that of 53-year-old Sandra Stell. McNear, who was present when the police officer arrived, told the officer that around 8:00 p.m., he began drinking alcohol with Stell, his live-in girlfriend of eight years. He explained that he fell asleep and awoke a few hours later to discover Stell "lying at the foot of the bed." He called for the police when he could not awaken her.

When the officer went into the bedroom, he saw the victim lying at the foot of the bed face up with her head propped up on a couch cushion and her eyes closed. He "noticed that . . . her shirt was pulled up, her pants were pulled halfway down. There was bruising around her neck, some blood just below her nose that was going down toward her mouth." A medical examiner with the GBI testified that Stell died from strangulation. In the last of three video-recorded interviews given to police on the

2

same day, McNear admitted that he choked Stell after she kicked him in "the privates" during a physical altercation.

The State also presented evidence showing that four years earlier, McNear stomped on Stell's right foot causing an old injury to begin bleeding again. A certified copy of McNear's guilty plea to battery in connection with this incident was admitted into evidence.

McNear asserts that "the State's circumstantial evidence did not exclude the hypothesis that [he] was acting in self-defense when he accidentally caused the death of Sandra Stell." See former OCGA § 24-4-6 ("To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."). "The difficulty with this argument is that the evidence is not entirely circumstantial but includes the very direct evidence of appellant's confession. . . ." *Cooper v. State*, 256 Ga. 234, 236 (3) (347 SE2d 553) (1986). See also *Luke v. State*, Ga. App. (2) (751 SE2d 180) (2013). Because McNear's conviction does not rest entirely upon circumstantial evidence, we find no merit in this assertion of error.

2. McNear claims that the trial court erred when it concluded that his statements to police were voluntary and admissible. McNear asserts that his statements were not voluntary because they were made over a six hour period of time while he was "exhausted and still inebriated" from an evening of heavy drinking. In support of this claim, McNear points to an alleged erroneous finding of fact in the trial court's written order on the voluntariness of his confession.[1]

> The trial court determines the admissibility of a defendant's statement under the preponderance of the evidence standard considering the totality of the circumstances. On appeal, we accept the trial court's findings on disputed facts and credibility of witnesses unless clearly erroneous, but independently apply the legal principles to the facts.

---

[1] In the portion of its order assessing the totality of the circumstances, the trial court noted that in addition to affording McNear "bathroom breaks, food, and drink," the "[o]fficers also allowed Defendant to make a phone call to his family." While the video of McNear's second interview shows that the officers did allow him to telephone his family, McNear contends that the trial court's order relies upon an erroneous assumption of fact, because another officer *denied* his first request to use the same telephone because it did not work. The video of the first interview shows that the officer picked up the receiver when McNear asked to use the telephone and then denied the request because there was "no cord" connecting the receiver to the telephone base. The officer testified in the motion for new trial hearing that he did not realize at the time he denied McNear's request that the telephone in the interview room could place calls while in speaker mode. A different officer in the second interview allowed McNear to use the phone in speaker mode. Based upon this evidence, the trial court's order does not contain an erroneous finding of fact.

4

(Citation and punctuation omitted.) *Thomas v. State*, 292 Ga. 429, 433 (3) (738 SE2d 571) (2013). And, "[t]he mere fact that a defendant was intoxicated at the time of the statement does not render it inadmissible. [Cit.]" *Frazier v. State*, 311 Ga. App. 293, 296 (1) (715 SE2d 712) (2011). "If the evidence is sufficient to establish that the defendant's statement was the product of rational intellect and free will, it may be admitted even if the defendant was intoxicated when he made the statement." *Screws v. State*, 245 Ga. App. 664, 665 (1) (538 SE2d 547) (2000).

The record in this case shows that after conducting an evidentiary hearing and reviewing the three video-recorded interviews, the trial court issued a seven-page order in which it concluded that McNear "was advised of each of his *Miranda* rights, he understood them, he voluntarily waived then, and he thereafter gave his statements freely and voluntarily without any hope of benefit or fear of injury." With regard to McNear's intoxication, the trial court made the following finding:

> While Defendant contends that he was intoxicated at the beginning of his interview with the officers, Defendant's intoxication did not prevent him from a making a rational, voluntary statement. Defendant was lucid, answered questions forthrightly, and recognized the nature of his detainment. Officers adequately explained to Defendant his rights several times throughout the interview, and Defendant clearly understood what the officers were telling him. Consequently,

5

considering the totality of the circumstances, Defendant's statements were voluntary in spite of his possible intoxication.

The trial court noted that "law enforcement officers questioned Defendant during three separate interview sessions over the span of six and a half hours. . . . There was a break in time in the video-recorded interview from 7:35 AM and 11:00 AM. . . . The officers spent approximately two hours and fifty minutes actually questioning Defendant."

Based upon our review of the waiver form signed by McNear and the video-recordings of his interviews with the police officers, "we find that the trial court was authorized to conclude that, despite [McNear]'s possible intoxication [and lack of sleep], he gave a voluntary statement and made a knowing and intelligent waiver of his *Miranda* rights." (Citations and punctuation omitted.) *Adams v. State*, 276 Ga. App. 319, 321-322 (3) (623 SE2d 525) (2005). Accord *Bryant v. State*, 286 Ga. App. 493, 497 (2) (649 SE2d 597) (2007).

3. McNair contends that the trial court erred "when it admitted duplicate photographs of the decedent's injuries, because the photographs were more prejudicial than probative." We disagree.

The transcript shows that McNair objected to the admission of three out of eight autopsy photographs (Exhibits 24, 26, and 27)[2] of the victim on the grounds that they were "basically just the exact same picture and would be more prejudicial than probative and would have the risk of inflaming the jury." The State responded that the photographs were necessary to show multiple signs of hemorrhage to prove that the victim died from strangulation. Following the admission of the photographs, the medical examiner testified about the anatomy shown in each photograph, as well as the bleeding or hemorrhage suffered by the victim internally. In its order denying McNear's motion for new trial, the trial court found that

> the photographs in question depicted various injuries the victim suffered. The first picture showed the victim's internal neck structures, including a portion of the tongue and one side of the larynx. The second picture displayed the internal neck structure, specifically showing an area of muscular hemorrhage. The third picture showed an overall view of the upper portion of the skin and soft tissue of the victim's upper chest.
>
> . . .

[2] The record before us does not include the photographs, but instead contains black and white photocopies of the photographs.

Having reviewed the pictures, this Court finds that the photographs Defendant objects to were not duplicative: the pictures showed varying stages of [the] autopsy of the victim. . . . Here, the State bore the burden of proving beyond a reasonable doubt that Defendant was guilty of murder. The autopsy photos demonstrated physical damage to the victim's throat and neck area. Thus, the photographs were relevant, and any prejudice from the photographs did not substantially outweigh the pictures' probative value.

"When a trial court is faced with the challenge that the probative value of evidence is outweighed by its tendency to unduly prejudice the jury, it must exercise its discretion in determining admissibility. [Cit.]" *Woods v. State*, 265 Ga. 685, 687 (3) (461 SE2d 535) (1995). "A photograph which depicts the victim after autopsy incisions are made will not be admissible unless necessary to show some material fact which becomes apparent only because of the autopsy." (Citation and punctuation omitted.) *Felder v. State*, 273 Ga. 844, 847 (5) (545 SE2d 918) (2001).

In this case, the post-incision autopsy photographs were material and relevant to show the multiple internal hemorrhages in the victim's neck that supported the medical examiner's conclusion that the victim died from strangulation. See *Thomas v. State*, 281 Ga. 550, 552 (2) (640 SE2d 255) (2007). The trial court did not abuse

8

its discretion by admitting the photographs into evidence. *Felder*, supra, 273 Ga. at 847 (5).

4. We find no merit in McNear's argument that the trial court violated the continuing witness rule by allowing the jury to watch his third interview with police in open court during their deliberations. The continuing witness rule is violated when the jury is allowed to bring recorded statements into the jury room during deliberations. In this case, the trial court followed "the standard practice, [which] is to bring the jury back into open court to rehear recorded evidence." *Bridges v. State*, 279 Ga. 351, 353 (2) (613 SE2d 621) (2005). "The trial court has discretion to allow the jury to rehear recorded statements, if it is done in open court." *Summage v. State*, 248 Ga. App. 559, 561 (1) (546 SE2d 910) (2001).

5. While conceding that evidence of his prior difficulty with the victim four years before her death was admissible, McNear contends that the trial court nonetheless erred by also admitting into evidence a certified copy of his battery conviction arising from that prior difficulty. We disagree. McNear cites no authority in support of this claimed error, and our courts have approved the use of a certified copy of a conviction as evidence of prior difficulties between the defendant and the

9

victim. See *Brown v. State*, 278 Ga. 810, 811 (4) (607 SE2d 579) (2005); *May v. State*, 287 Ga. App. 407, 408 (2) (651 SE2d 510) (2007).

6. In his remaining enumeration of error, McNear contends he received ineffective assistance of counsel because his attorney failed to investigate and introduce evidence that the victim stabbed him two months before her death. McNear also asserts that defense counsel should have emphasized to the jury that the State failed to introduce into evidence the shirt worn by McNear at the time of the victim's death that McNear claimed had his blood, not the blood of the victim, on it. According to McNear, this evidence could have helped convince the jury to acquit him, or at most, convict him of involuntary manslaughter as opposed to voluntary manslaughter.

In ruling on a claim of ineffective assistance,

> [u]nder the two-part test established in *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984), [McNear] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong.

10

(Citation and punctuation omitted.) *Harrison v. State*, 313 Ga. App. 861, 865 (3) (722 SE2d 774) (2012).

> Making that showing requires that [McNear] rebut the strong presumption that his lawyer's conduct falls within the wide range of reasonable professional assistance. As a general rule, matters of reasonable trial tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel. We will not reverse a trial court's findings regarding either the deficiency or prejudice prong of the *Strickland* test unless clearly erroneous.

(Citations, punctuation and footnotes omitted.) *Lott v. State*, 303 Ga. App. 775, 783-784 (3) (694 SE2d 698) (2010). "The decision not to pursue a defense is one of trial strategy with which we will not generally interfere. Trial strategy and tactics do not equate with ineffective assistance of counsel." (Citations and punctuation omitted.) *Smith v. State*, 231 Ga. App. 677, 684 (6) (499 SE2d 663) (1998).

In the hearing on McNear's motion for new trial, trial counsel testified that he reviewed the police report, which included a neighbor's hearsay statement about another neighbor telling him that McNear had been stabbed by the victim two months earlier. Defense counsel acknowledged that he did not do any follow-up investigation to determine if the victim had previously stabbed McNear. He explained that while he discussed self-defense with McNear, their defense from the beginning "was that

11

Mr. McNear was not guilty of anything." In his conversations with trial counsel, McNear "never expressed ... that it was a self-defense case. He had always expressed to me complete innocence." Their trial strategy was to assert innocence, not self-defense. With regard to injuries to McNair's hands, trial counsel testified, "The only thing I independently recall, a conversation about injuries to him, was he had, I believe, some marks on his hands or something like that that he indicated came from working in the yard or doing yardwork."

McNear testified in the motion for new trial hearing that he asked trial counsel to raise a claim of self-defense, but was told it was not a good idea because of his recorded statements to the police. He testified that the victim stabbed him before he choked her, that she stabbed him in the hand two months before her death, and that she disfigured his hands in 2005 when she hit them with an iron tray.[3] He testified that the blood observed on his shirt by the detective during his recorded interview was his blood, not that of the victim. At the hearing, McNear did not introduce any evidence to support his theory of self-defense other than his testimony.[4] While he

[3] In his video-recorded statements, the defendant did not tell the police that the victim stabbed him the night she was killed or at any other time.

[4] He did not present any DNA evidence, police reports, medical records, arrest records, or testimony by neighbors who may have witnessed prior incidents between

12

testified that he wanted to assert self-defense at trial, he never claimed that he would have testified at trial to support such a defense.

McNear explained that he did not testify at trial because his trial counsel told him that it was in his best interest not to do so. He admitted that it was his decision not to testify, but that he made that decision based upon trial counsel's advice. The record shows that when the trial court informed McNear about his right to testify at trial, it stated, "I will add that it's always important and the smart thing to do to seriously consider your lawyer's opinion before you make your decision. But, ultimately, you're the one that has to make that decision. Your lawyer cannot make you testify, and he cannot keep you from testifying if you want to."

In his opening statement, trial counsel acknowledged that McNear admitted to police that he placed his hands around the victim's neck, but explained

> that's not the whole story. There's going to be more than that. . . . I want you to pay attention to the lack of evidence because there's not going to be any physical evidence that ties Mr. McNear to this crime. . . . [Y]ou're not going to hear anyone come in here and get up on the witness stand and say that they saw Mr. McNear do anything to Ms. Stell. There's no eyewitness to this. And while you'll hear about his

him and the victim. He also failed to introduce evidence about the instrument used by the victim to stab him the night of her death.

13

confession, what you'll also hear is that . . . this came after three hours, three hours of questioning by detectives. . . . I just want you to pay attention to everything that's off in this case. . . . Mr. McNear is not guilty.

In his closing statement, trial counsel again emphasized the lack of physical evidence against McNear, including the State's failure to test for blood on McNear's clothes and failure to test for McNear's DNA under the victim's fingernails. He also pointed out that McNear called 911. With regard to McNear's confession, trial counsel went over in detail the amount of time he spent in police custody and argued that McNear confessed and told the police what they wanted to hear only after hours of interrogation.

The trial court denied McNear's claim of ineffective assistance of counsel, concluding, "Although other attorneys might have chosen to put forth a self-defense argument on behalf of Defendant, trial counsel's strategy did not fall below an objective standard of reasonableness." We agree with the trial court's conclusion.

Faced with McNear's video-recorded confession, trial counsel had to consider a defense based upon (1) the assertion that McNear's confession was the result of prolonged interrogation by police and the lack of physical evidence showing he committed the crime; or (2) admitting that McNear killed the victim but was justified

14

in doing so based upon self-defense. McNear's prior battery conviction involving the victim presented difficulties for both defenses. In the motion for new trial hearing, McNear presented no evidence but his own testimony supporting a claim of self-defense. Trial counsel testified that McNear insisted that he was innocent and told him that the old injuries to his hands happened while he was doing yard work. "[C]ounsel is entitled to base the defense on the veracity of the client's assertions . . . [I]t [i]s reasonable for the defense lawyer to rely on [a defendant's] claim of complete innocence." *Sparks v. State*, 277 Ga. 72, 74-75 (3) (586 SE2d 645) (2003). "It is within the trial court's discretion to resolve conflicting testimony between trial counsel and a defendant at a hearing on motion for new trial." (Citation and punctuation omitted.) *Reid v. State*, 286 Ga. 484, 486 (3) (a) (690 SE2d 177) (2010). The trial court was authorized to conclude from the conflicting evidence presented at the motion for new trial hearing that trial counsel's strategic defense decision did not amount to ineffective assistance of counsel.

*Judgment affirmed. Doyle, P. J., and McFadden, J., concur.*