**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**July 7, 2016**

# In the Court of Appeals of Georgia

A16A0509. THE STATE v. WILLIAMS.

MCMILLIAN, Judge.

Following his conviction in a bench trial on one count of driving under the influence of drugs ("DUI"), OCGA § 40-6-391 (a) (2), and one count of failure to maintain lane, OCGA § 40-6-48 (1), John Cletus Williams appealed to the Supreme Court of Georgia asserting that the state-administered blood test, taken without a search warrant, violated his rights under the Fourth Amendment to the United States Constitution, as well as Article I, Section I, Paragraph XIII of the Georgia Constitution. *Williams v. State*, 296 Ga. 817, 817 (771 SE2d 373) (2015) ("*Williams I*"). Our Supreme Court vacated the trial court's order denying the motion to suppress, as well as the judgment of conviction, holding that the trial court "failed to address whether Williams gave *actual consent* to the procuring and testing of his blood,

which would require the determination of the voluntariness of the consent under the totality of the circumstances." (Emphasis in original.) Id. at 823. The Supreme Court accordingly remanded the case to the trial court for reconsideration of the motion to suppress. Id.

On remand, the trial court held an evidentiary motion hearing on September 2, 2015,[1] and the trial court subsequently granted the motion. The State challenges that order in this appeal.

"When the facts material to a motion to suppress are disputed, it generally is for the trial judge to resolve those disputes and determine the material facts." *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015). In such a case,

> [f]irst, an appellate court generally must accept those findings unless they are clearly erroneous. Second, an appellate court must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court. And third, an appellate court generally must limit its consideration of the disputed facts to those expressly found by the trial court.

---

[1] The trial court's initial denial of the motion was based on stipulated facts at an abbreviated hearing held immediately before the bench trial.

(Citations and footnotes omitted.) Id. See also *May v. State*, 334 Ga. App. 807, 807 (780 SE2d 455) (2015). However, "less deference to the trial court is owed to the extent that material facts definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility." *Hughes*, 296 Ga. at 746, n.5. In any event, "[a]bsent an abuse of discretion, the trial court's order on a motion to suppress will not be disturbed." (Citation and punctuation omitted.) *Logan v. State*, 309 Ga. App. 95, 100 (3) (709 SE2d 302) (2011). See also *Hanes v. State*, 294 Ga. 521, 524 (3) (755 SE2d 151) (2014) (applying abuse of discretion standard of review to motion to suppress); *Davis v. State*, 286 Ga. 74, 77 (3) (686 SE2d 249) (2009) (same).

In *Williams I*, the Supreme Court summarized the pertinent facts from the prior motion hearing and bench trial, "which were either stipulated at trial or are not in dispute," as follows:

> On September 22, 2012, Williams was arrested by an officer of the Gwinnett County Police Department and charged with DUI and failure to maintain lane; the officer had "reasonable articulable suspicion" to stop Williams and probable cause to arrest him. Williams was placed in custody but was not advised of his *Miranda* rights. The officer read Williams the age-appropriate statutory implied consent notice and pursuant to it requested that Williams submit to blood and urine tests.

3

The officer told Williams that it was "a yes or no question," and Williams verbally responded "yes." There was no other conversation about consent for the testing, i.e., the officer did not ask Williams "if [Williams] was willing to freely and voluntarily give a test." The officer "read [Williams] the implied consent and that was pretty much the end of it." It "was an ordinary DUI," there "were no exigent circumstances," and no search warrant was obtained. Williams was taken to a medical center where blood and urine samples were taken for the purpose of his criminal prosecution.

(Citation and footnote omitted.) 296 Ga. at 818-19.

At the September 2, 2015 motion hearing, the arresting officer testified as to the circumstances surrounding his initial traffic stop of Williams.[2] Upon receipt of a citizen report of a car driving erratically, the officer traveled to the scene where he observed the left tires of Williams's car traveling in the oncoming lane of traffic. After initiating the stop, the officer spoke with Williams, who at first denied having anything to drink or taking any medications. When Williams stepped out of his car, he leaned on the vehicle as he walked toward the rear and then leaned against the trunk as he spoke with the officer. Williams again denied that he used any alcohol or drugs, and after he fell back against the car's trunk, Williams told the officer he had

[2] The record contains no video of the traffic stop.

4

"an equilibrium problem." The officer testified that Williams seemed very unsteady on his feet, confused, and his speech was slow, thick, and slurred. When the officer asked Williams if he was taking any medication for his equilibrium problem, he stated that he was taking Lortab and another drug.

The officer asked for consent to "check [Williams] out to see if he was safe to drive." According to the officer, Williams seemed confused but appeared to understand what the officer was saying when he gave his consent. The officer then began to conduct the standardized field sobriety evaluations, starting first with the horizontal gaze nystagmus test (HGN). During each of the tests, when the officer explained the instructions and asked Williams if he understood them, Williams indicated that he did and appeared to the officer to comprehend what was being said.

However, during the administration of the HGN test, Williams was unable to follow the officer's finger, even after being instructed seven times to do so. The officer thus was unable to complete the evaluation, but he believed that Williams's inability to perform the test demonstrated impairment. The officer also administered the walk and turn evaluation, but Williams was unable to follow his instructions. Although the officer told Williams to keep his hands down by his side, Williams raised them straight out. Williams also was unable to maintain his instructional

5

position, losing his balance three times, and he never even attempted to turn at the end of his walk. The officer concluded from Williams's performance on that test that he had demonstrated seven of the eight total clues indicating impairment. In addition, the officer performed the one-leg stand evaluation, during which Williams changed from his right leg to his left leg without instruction to do so. Based on Williams's performance, the officer observed three of the four clues indicating impairment. The officer further attempted to perform the lack of convergence evaluation, but Williams was unable to follow his finger as instructed, and the officer terminated the evaluation. However, Williams successfully completed the Romberg evaluation.

After the tests, the officer told Williams that he was placing him under arrest for DUI, placed the handcuffs on him, conducted a search of his person, and escorted him to the back seat of the patrol car. The officer then stood outside the patrol car with the door open, read Williams the implied consent notice for suspects 21 years or older before asking for a blood and urine sample. The officer told Williams that "[i]t's a yes or no question." Williams and the officer had no further discussion on the issue, and the officer never advised Williams of his constitutional rights before

Williams gave his consent.[3] During this exchange, the officer spoke with Williams in his normal tone and did not have to raise his voice, put his hands on Williams or threaten him; rather, Williams was cooperative during the entire encounter and appeared to the officer to understand what was being said.

The officer transported Williams to a hospital, where the officer registered Williams and led him down a hall to the location where the tests were to be performed. As they walked down the hall, Williams leaned on the officer in order to keep his balance. The officer seated Williams in a chair, removed the handcuffs, and "had [him] sign the consent forms" because the hospital would not perform the tests without the signed forms. The officer could not recall whether the phlebotomist or he read the consent forms to Williams, but Williams was given a form to look at before signing. The phlebotomist then drew two vials of blood, and Williams gave a urine

---

[3] The parties stipulated to the facts surrounding the reading of the implied consent notice, including a stipulation that "the implied consent was timely read, age appropriate, and it was the statutory implied consent notice that the officer was required to read under Georgia's implied consent law."

sample without assistance.[4] Afterward, the officer put the handcuffs back on Williams and drove him to jail.

"The Fourth Amendment of the United States Constitution and Article I, Section I, Paragraph XIII of the Georgia Constitution both protect an individual's right to be free of unreasonable searches and seizures[] and apply with equal force to the compelled withdrawal of blood, breath, and other bodily substances." *Kendrick v. State*, 335 Ga. App. 766, 768 (782 SE2d 842) (2016). See also *Williams I*, 296 Ga. at 819; *Cooper v. State*, 277 Ga. 282, 285 (III) (587 SE2d 605) (2003). A warrantless search to extract blood "is presumed to be invalid and the State has the burden of showing otherwise." *Williams I*, 296 Ga. at 819. Thus, "[w]hen relying on the consent exception to the warrant requirement, the State has the burden of proving that the accused acted freely and voluntarily under the totality of the circumstances." (Citations and punctuation omitted.) *Cooper*, 277 Ga. at 291 (VI). In its sole enumeration of error, the State contends that the trial court erred in determining that Williams did not actually consent to take the state-administered blood test under the totality of the circumstances.

---

[4] Although Williams gave both a blood and urine sample, he abandoned any challenge to the urine test and his argument on the motion to suppress focused on the blood test.

Georgia courts generally have found that a consent to search is voluntary if the totality of the circumstances show no implicit or explicit use of "fear, intimidation, threat of physical punishment, or lengthy detention to obtain the consent." *Kendrick*, 335 Ga. App. at 769. See also *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (II) (B) (93 SCt 2041, 36 LE2d 854) (1973); *Cuaresma v. State*, 292 Ga. App. 43, 47 (2) (663 SE2d 396) (2008). In making this determination, we have considered a number of factors including "prolonged questioning; the accused's age, level of education, intelligence and advisement of constitutional rights; and the psychological impact of these factors on the accused." (Citation and punctuation omitted.) *Kendrick*, 335 Ga. App. at 769. However, "no single factor is controlling."(Citation omitted.) *State v. Tye*, 276 Ga. 559, 560 (1) (580 SE2d 528) (2003). Rather, the trial court "should consider whether a reasonable person would feel free to decline the officers' request to search or otherwise terminate the encounter." (Citations and punctuation omitted.) *Kendrick*, 335 Ga. App. at 769. "Mere acquiescence to the authority asserted by a police officer cannot substitute for free consent." (Citations and punctuation omitted.) Id. "[W]e are required to scrutinize closely an alleged consent to search." (Citation and punctuation omitted.) *State v. Durrence*, 295 Ga. App. 216, 218 (671 SE2d 261) (2008).

In the order granting the motion to suppress, the trial court first stated that articulable suspicion supported the traffic stop and that the officer had probable cause to arrest Williams. The trial court then identified the primary question before it as "whether or not the Defendant gave actual consent and voluntary consent to the state administered test," tracking the Supreme Court's directive in *Williams I* to address the issue of actual consent and the voluntariness of the consent under the totality of the circumstances.[5] 296 Ga. at 821. The trial court found that Williams's communications with the officer during the field sobriety evaluations indicated that he was confused, noting Williams's failure to properly follow the officer's instructions on the HGN, walk and turn, and the one-leg stand evaluations. The trial court found that this evidence brought Williams's mental capacity into question and showed that Williams appeared "highly intoxicated."[6] After citing the testimony regarding the reading of the implied consent notice while Williams was handcuffed

---

[5] In fact, the State defined the issue before the trial court in the same manner in its argument at the September 2, 2015 motion hearing.

[6] The trial court also found that the officer had testified that Williams sometimes laid down in his seat while driving. Although we found no testimony from the officer to that effect, the witness who reported Williams's driving to police testified at the bench trial that he saw Williams lean over so far that his head would disappear from view when he made a driving maneuver such as a turn.

10

and sitting in the back of the patrol car and the events at the hospital, during which Williams had to lean on the officer for support, the trial court concluded that "[t]he State was able to show that Williams acquiesced to the officer's request that he submit to the state administered blood and urine tests but was unable to show actual consent." Accordingly, the trial court ruled that the results of both the urine or blood tests would not be admissible at trial.

Although the State argues that the trial court erred in failing to consider all the factors pertinent to the totality of the circumstances analysis, we are not aware of any requirement that the trial court expressly address each of these factors in its order, particularly when the State in carrying its burden of proof failed to present evidence on these factors. To the contrary, the trial judge acknowledged that he was required to apply the totality of the circumstances test to the evidence at the September 2 hearing,[7] and the trial court's order states that the court's findings were based on Williams's motion, the parties' oral arguments, "evidence presented, all matters of record and the applicable and controlling law." Accordingly, we cannot say that the

[7] When Williams's defense counsel objected to the State's questions addressing the performance of the field sobriety tests, the trial court ruled "based on the Supreme Court's direction to look at the totality of the circumstances, I think the interaction between the officer and the Defendant are relevant to the determination we make today."

11

trial court failed to consider the totality of the circumstances as presented by the evidence and directed by *Williams I*.

The State argues, however, that the trial court erred in giving too much weight to Williams's intoxicated state in its consideration of the motion to suppress, citing the trial court's finding that Williams was "highly intoxicated." However, a defendant's level of intoxication may be an appropriate factor for consideration among the totality of the circumstances in determining the voluntariness of consent. See *State v. Bowman*, __ Ga. App. __ (Case No. A16A0555, decided June 7, 2016) (affirming trial court's grant of motion to suppress blood tests results where trial court relied on evidence that defendant was "significantly intoxicated" when he gave his consent to the test). Although this Court has held in the somewhat analogous situation of a voluntary waiver of a defendant's Fifth Amendment rights that mere intoxication is not sufficient to make a defendant's statement inadmissible, *McNear v. State*, 326 Ga. App. 32, 34 (2) (755 SE2d 844) (2014), our Supreme Court has held a high level of intoxication may be sufficient to support a trial court's finding that a statement is involuntary. *Clay v. State*, 290 Ga. 822, 826 (1) (B) (725 SE2d 260) (2012) (no valid consent or *Miranda* waiver when defendant was suffering from after affects of drug-induced coma). See also *State v. Folsom*, 286 Ga. 105, 111 (4) (686 SE2d 239) (2009)

12

(considering whether defendant's use of prescription drugs rendered his statements involuntary and affirming the trial court's ruling on the issue). In any event, whether or not intoxication is a factor among the totality of circumstances, the State must prove that the defendant voluntarily made a statement to police out of "rational intellect and free will" in order to present the statement as evidence at trial. (Citations and punctuation omitted*.) McNear*, 326 Ga. App. at 34 (2). We see no reason to alter this standard in the case of voluntary consent to undergo a blood test.

Here, the trial court found that the State failed to carry its burden. Under the standard set forth in *Hughes,* this Court must accept the trial court's factual findings unless clearly erroneous and must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court. 296 Ga at 746.[8] Based on this standard of review, we cannot say that the evidence demanded a finding contrary to the trial court's ruling and thus we find no abuse of discretion by the trial court in granting Williams's motion to suppress. See *Durrence*, 295 Ga. App. at 218

---

[8] We have no independently verifiable evidence such as a videotape to lessen the deference due to the trial court in making this determination. See *State v. Reid*, __ Ga. App. __ (Case No. A16A1237, decided April 22, 2016) (relying on videotape of traffic stop to reverse grant of motion to suppress); *State v. Depol*, 336 Ga. App. 191 (784 SE2d 51) (2016) (same). Compare *Bowman*, __ Ga. App. at __ (finding that videotape supported trial court's findings).

("[I]n the absence of evidence of record *demanding* a finding contrary to the judge's determination, the appellate court will not reverse the ruling sustaining a motion to suppress.") (citation and punctuation omitted; emphasis in original); *Kendrick*, 335 Ga. App. at 772 (affirming denial of motion to suppress under the standard of review, "affording appropriate deference to the trial court that heard the testimony first-hand").[9]

*Judgment affirmed. Miller, P. J., and McFadden, J., concur.*

---

[9] Even though the officer testified that he believed Williams understood what was being said to him during the encounter,

> [t]he trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony. . . . [Thus,] a rational trier of fact can choose to reject even "undisputed" testimony. . . . Factors such as demeanor, contradictory or inconsistent statements and evidence that an officer had "ulterior motives" can all lead a finder of fact to disregard testimony by an officer. . . .

(Citation omitted.) *Brown v. State*, 293 Ga. 787, 804 (3) (b) (2) (750 SE2d 148) (2013).

14