**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**August 16, 2019**

# In the Court of Appeals of Georgia

A19A1152. CORDOVA v. THE STATE.

REESE, Judge.

A Rockdale County jury found George Cordova, Jr., guilty of burglary in the first degree,[1] cruelty to children in the first degree,[2] cruelty to children in the third degree,[3] terroristic threats,[4] and two counts of aggravated assault.[5] The trial court sentenced him to serve a total of 65 years, with the first 40 years in confinement and the remainder to be served on probation. The Appellant seeks review of the denial of

---

[1] OCGA § 16-7-1 (b).

[2] OCGA § 16-5-70 (b).

[3] OCGA § 16-5-70 (d).

[4] OCGA § 16-11-37 (b) (1 (A).

[5] OCGA § 16-5-21 (a) (2).

his motion for new trial, arguing that the trial court erred in denying his motion to suppress and in allowing the State to introduce evidence of other crimes, and that the evidence was insufficient to convict him. For the reasons set forth infra, we affirm.

This is the second appeal of the Appellant arising from events that occurred on November 24, 2013.[6] Viewed in the light most favorable to the jury's verdict,[7] the record shows that R. G. and J. M. lived on Gees Mill Road in Rockdale County with their four children and a nephew on November 24, 2013. At approximately 3:30 a.m. that morning, R. G. woke up and saw an unknown person walk into her bedroom. She woke her husband and told him "somebody's here." When R. G. called out to the person he backed out of the room, "crawling on his knees[.]" R. G. ran into the living room and saw her nephew sleeping on the sofa. She ran to her daughters' bedroom and saw a person "hiding" behind the door. R. G. turned on the light, saw that her two daughters, 11-year old N. M. G. and 12-year old J. M. G., were still sleeping, and

---

[6] In the Appellant's first appeal ("*Cordova I*"), we affirmed the trial court's denial of the Appellant's plea in bar, in which he argued that the two indictments against him that arose from events that allegedly occurred on November 24, 2013, involved the same conduct, and thus, they should have been tried together under OCGA § 16-1-7 (b). See *Cordova v. State*, __ Ga. App. __, (June 13, 2019) (unpublished).

[7] See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

immediately yelled to J. M., "there's someone here." J. M. G. ran into his daughters' bedroom and pushed and dragged the intruder into the hallway. R. G. testified that she saw her daughter's blanket wrapped around the intruder, while her husband pushed him out of the bedroom. R. G. testified that the intruder wore all dark clothing and "he looked like he'd been drinking." Although R. G. wanted to call the police, J. M. G. told her that "maybe [the intruder] was sick and cold. He just came in to get a blanket." J. M. watched the intruder leave the home.

After J. M. checked all the residence's outside doors, R. G. turned on the hallway light and cracked open her bedroom door, and the family returned to bed. R. G. remained awake however, thinking of the intruder, until she saw the hallway light turn off. R. G. testified that she sat up but did not get up because she "felt very nervous." Suddenly, R. G. heard "low screams[ ]" coming from N. M. G. R. G. ran to the children's room and saw the intruder "poking" her other daughter, J. M. G., with a knife while holding N. M. G.'s feet.

N. M. G. testified that the intruder told her and J. M. G. that if they screamed, he would "cut" J. M. G. J. M. G. testified that the intruder put the knife close to her neck, and told her "not to say anything [or] call anybody or he would hurt [her.]" She

further testified that she received a cut on her hand and thought the intruder was going to "[k]ill" her.

R. G. yelled for J. M., who ran back into his daughters' bedroom and struggled with the intruder. R. G. testified that she yelled for her nephew to call the police while the intruder tried to cut J. M. with the knife. J. M. pushed the intruder out of the bedroom.

At around 4:30 a.m., Rockdale County Sheriffs' deputies and City of Conyers police officers responded to a call reporting a possible burglary at the residence of R. G. and J. M., located on Gees Mill Road. While responding to the call, a deputy saw a man, later identified as the Appellant, cross in front of his vehicle from a "wood line" or "clearing" located at the entrance of a nearby subdivision. The deputy testified that he observed the Appellant walking at approximately 5:20 a.m., wrapped in a "bright colored Disney blanket." The deputy testified that he questioned the Appellant. During the questioning, the Appellant appeared to understand the questions and responded to them. The Appellant told the deputy that he had come from his "nephew and niece's house." The deputy testified that the Appellant stated he had obtained the blanket from his niece.

The deputy identified State's Exhibit 19 as the blanket found on the Appellant. The deputy read the Appellant the *Miranda*[8] warnings and placed him into custody. A police officer searched the area and found a knife lying on the ground close to the Appellant.

During the trial, two videos of the police stop of the Appellant were played for the jury. Also, the police interviews of J. M. G. and N. M. G. were played for the jury.

At trial, R. G. identified the intruder's knife found near the Appellant as one that was missing from her kitchen, and identified the blanket found near the Appellant as belonging to her daughter. Also, she identified the intruder as the Appellant in court. J. M. identified the knife found near the Appellant as one of his family's kitchen knives. J. M. also identified the blanket worn by the intruder as he left J. M.'s home as one of his daughter's blankets.

The State also introduced the testimony of M. L., who lived on Millstone Manor, in "close proximity[ ]" to Gees Mill Road. M. L. testified that the Appellant had attended a birthday party at his (M. L.'s) residence on the evening of November 23, 2013. Around 2:30 a.m. on the morning of November 24, people began leaving the party, and M. L. asked a friend where the Appellant was located. The friend

---

[8] See *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

pointed to M. L.'s daughter's room. M. L. went to his daughter's room, turned the light on, and saw the Appellant there with M. L.'s five-year-old daughter and his unconscious sister, who earlier that evening, had "a little to much to drink." M. L. "grabbed . . . and had dragged [the Appellant] out of the room[,]" and escorted him out of the home.

After his conviction on the instant charges, the Appellant filed a motion for new trial. The trial court conducted a hearing, and denied the Appellant's motion. This appeal followed.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[9] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.[10]

---

[9] 443 U. S. at 319 (III) (B).

[10] *Walker v. State*, 329 Ga. App. 369, 370 (765 SE2d 599) (2014) (punctuation and footnote omitted).

6

"The standard of *Jackson v. Virginia*[11] is met if the evidence is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crime charged."[12] With these guiding principles in mind, we turn now to the Appellant's specific claims of error.

1. The Appellant argues that the evidence was insufficient to support his convictions for burglary, aggravated assault, terroristic threats, and cruelty to children. Specifically, the Appellant contends that the State failed to establish his identity as the perpetrator of each of crimes charged in the indictment. We conclude that there was sufficient evidence for the jury to conclude, beyond a reasonable doubt, that the Appellant's identity was established as the perpetrator of each of the crimes, as indicted.

(a) *Burglary*

OCGA § 16-7-1 (b) states, in relevant part that, "[a] person commits the offense of burglary in the first degree when, without authority and with the intent to commit a felony or theft therein, he or she enters or remains within an occupied . . . dwelling house of another[.]" The State charged the Appellant in Count 1 of the indictment

---

[11] 443 U. S. at 319 (III) (B).

[12] *Bautista v. State*, 305 Ga. App. 210, 211 (1) (699 SE2d 392) (2010).

7

with burglary for entering the Gees Mill Road residence" without authority and with the intent to commit an [a]ggravated [a]ssault[.]"

Here, the record shows that neither R. G. nor J. M. gave the Appellant permission to enter their home. Further, R. G. identified the Appellant as the intruder who entered her home twice without permission, held a knife to her daughter's neck, and struggled with J. M. as he tried to remove the Appellant from the home. Thus, the evidence was sufficient to support the Appellant's burglary conviction.[13]

(b) *Aggravated assault and terrorist threats*

According to OCGA § 15-5-21 (a) (2), "[a] person commits the offense of aggravated assault when he or she assaults: [w]ith intent . . . a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]" Under OCGA § 16-11-37 (b) (1) (A), "[a] person commits the offense of a terroristic threat when he . . . threatens to [c]ommit any crime of violence[.]" Further, under OCGA § 16-11-37 (b) (2) (A), (b) (3), "[s]uch terroristic threat shall be made [w]ith the purpose of

---

[13] See *Davis v. State*, 326 Ga. App. 778, 779 (1) (757 SE2d 443) (2014) (evidence sufficient to support burglary conviction where the State established that the defendant entered the victims's residence without her consent and the evidence authorized the jury to find that the defendant entered the home with intent to rape the victim).

8

terrorizing another[, and n]o person shall be convicted under this subsection on the uncorroborated testimony of the party to whom the threat is communicated."

In Counts 2 and 3 of the indictment, the State charged the Appellant with two counts of aggravated assault for "assault[ing J. M. G. and J. M.] with a knife[,] which . . . placed [them] in reasonable apprehension of immediately receiving a violent injury[.]" Further, the State charged the Appellant in Count 5 with making a terroristic threat "to commit . . . murder, a crime of violence, with the intent to terrorize [J. M. G.]"

The State presented evidence at trial that the Appellant held a knife to J. M. G.'s neck upon entering her bedroom and threatened to hurt her, in the presence of N. M. G., who heard the Appellant's statement. Also, the record shows that J. M. struggled with the Appellant, who was holding a knife, to remove him from the girls' bedroom after the Appellant gained entry a second time into J. M.'s home. Therefore, the evidence was sufficient to support the Appellant's convictions on the crimes as indicted in Counts 2, 3, and 5.[14]

---

[14] See *Crane v. State*, 297 Ga. App. 880, 883 (2) (678 SE2d 542) (2009) (evidence sufficient to support aggravated assault conviction where the defendant had confronted the victim while holding a hammer); *Jordan v. State*, 214 Ga. App. 346, 347 (447 SE2d 341) (1994) ("A person commits the offense of a terroristic threat when he threatens to commit any crime of violence. When the communication of a

(c) *Cruelty to children*

Under OCGA § 16-5-70 (b), "[a]ny person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." Cruelty to children in the third degree, prohibited by OCGA § 16-5-70 (d), is committed when "the primary aggressor[ ] intentionally allows a child under the age of 18 to witness the commission of a forcible felony, battery, or family violence battery[ ]" or knows that a child under the age of 18 is present and sees or hears such criminal act.

Counts 4 and 6 charged the Appellant with "caus[ing J. M. G.] cruel and excessive mental pain[ by] awak[ening her] from sleep and [placing] a knife to [her] head[,]" while [knowing that N. M. G.] was present and [saw] and [heard the Appellant], who was the primary aggressor, commit a forcible felony."

As to Count 4, the State presented evidence that the Appellant woke up J. M. G., placed a knife to her neck, and threatened to hurt her. J. M. G. testified that she thought that the Appellant was going to kill her. N. M. G. testified that she heard the Appellant threaten her sister. Further, R. G. testified that she saw the Appellant

threat is done to terrorize another, the crime of terroristic threats is complete.") (citations and punctuation omitted).

10

holding a knife to J. M. G.'s neck. Regarding Count 6, N. M. G. testified that she awoke and saw the Appellant holding a knife against her sister and then screamed for help. Consequently, the evidence was sufficient to support the Appellant's convictions on Counts 4 and 6.[15]

Given the record before us, including the testimony of the children, we find that the jury's guilty verdicts on the crimes as charged in the indictment were supported by sufficient evidence, and it was not error for the trial court to deny the Appellant's motion for a new trial as to these convictions.[16]

---

[15] See *Cordero v. State*, 296 Ga. 703, 707 (1) (770 SE2d 577) (2015) (defendant's cruelty to children in the first degree conviction upheld where the State presented evidence that the defendant's actions caused excessive mental pain); *Dennard v. State*, 305 Ga. 463, 465-466 (1) (826 SE2d 61) (2019) (defendant's conviction of child cruelty in the third degree upheld where the defendant shot the victim while children were present).

[16] See *Bray v. State*, 294 Ga. App. 562, 563 (1) (669 SE2d 509) (2008) ("A jury is authorized to believe or disbelieve all or any part of the testimony of witnesses, and it serves as the arbiter of conflicts in the evidence before it.") (citation and punctuation omitted); *McKee v. State*, 275 Ga. App. 646, 647 (1) (621 SE2d 611) (2005) ("We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.").

11

2. The Appellant contends that during a *Jackon-Denno*[17] hearing, the trial court erred in denying his motion to suppress all of his statements regarding the blanket found in his possession. Specifically, the Appellant argues that his "will was overborne by reason of his intoxication[, thus] his statements could not have been the product of a rational intellect." We disagree.

> The trial court determines the admissibility of a defendant's statement under the preponderance of the evidence standard considering the totality of the circumstances. On appeal, we accept the trial court's findings on disputed facts and credibility of witnesses unless clearly erroneous, but independently apply the legal principles to the facts. And, the mere fact that a defendant was intoxicated at the time of the statement does not render it inadmissible. If the evidence is sufficient to establish that the defendant's statement was the product of rational intellect and free will, it may be admitted even if the defendant was intoxicated when he made the statement.[18]

---

[17] See *Jackson v. Denno*, 378 U.S. 368 (84 SCt 1774, 12 LE2d 908) (1964)*; Richardson v. State*, 265 Ga. App. 880, 882 (2) (595 SE2d 678) (2004) ("Where the voluntariness of a confession is questioned on the trial of a criminal case[,] it is necessary to have a separate [Jackson-Denno] hearing as to the voluntariness before it is finally presented to the jury. Such hearing, however, is only required if the defendant challenges the voluntariness of the statement and objects to its admission.") (punctuation and footnotes omitted).

[18] *McNear v. State*, 326 Ga. App. 32, 34 (2) (755 SE2d 844) (2014) (citations and punctuation omitted).

In denying in part the Appellant's motion to suppress, the trial court ruled that, "[the Appellant] was stopped appropriately, he was detained appropriately. Anything he said prior to [*Miranda* w]arnings do[es] not come in."

The record reflects that, during the *Jackson-Denno* hearing, a Rockdale County Sheriff's deputy ("deputy") and a City of Conyers police officer ("police officer") testified about their interactions with the Appellant on November 24, 2013. The deputy testified that, while driving his patrol car, he spotted the Appellant wrapped in a "Disney blanket walking down the road." The deputy stopped his vehicle, got out of it, and asked the Appellant to remove the blanket. The deputy placed the Appellant in custody, and read him the *Miranda* warnings. After reading the *Miranda* warning, when the deputy questioned the Appellant about the blanket, he responded that "his niece [A.], gave [the blanket] to him[.]" The deputy testified that he could smell alcohol on the Appellant's breath but "[the Appellant was coherent[,] he explained where he was[, h]e responded to the questions, [and h]e responded to the instructions initially."

The police officer testified at the hearing that he saw the Appellant with a "girl's Disney theme blanket over his shoulders.". The police officer identified a video that he took of the Appellant that night, which was played during the hearing.

13

Under the totality of the circumstances, the trial court did not err in denying in part the Appellant's motion to suppress. After the deputy read him the *Miranda* warnings, the Appellant coherently answered the deputy's questions and followed directions.[19] Thus, this argument is without merit.

3. The Appellant argues that the trial court erred in admitting evidence of other crimes, that, shortly before he entered the Gees Mill Road residence, he had been found in a child's bedroom in a home on Millstone Manor, about a mile away.[20] Specifically, the Appellant asserts that the testimony of the home owner where the party took place was "highly suggestive of sexual misconduct [on the part of the Appellant, and] there was nothing similar or related to" the events that occurred at Gees Mill Road.[21] The Appellant's argument is unavailing.

---

[19] See *McNear*, 326 Ga. App. at 34 (2) (defendant's statements to police were voluntary and admissible despite the defendant's claim that he was "exhausted and still inebriated from an evening of heavy drinking[ ]" at the time he made the statements).

[20] This alleged crime is among those at issue in *Cordova I*. See footnote 6, supra.

[21] We note that, with regard to the Appellant's argument that the events that occurred at the Millstone Manor residence were dissimilar or unrelated to the those that happened at the Gees Mill Road residence, the Appellant asserted the opposite argument in his appellate brief for *Cordova I*.

14

OCGA § 24-4-404 (b) ("Rule 404 (b)") states, in pertinent part,

> [e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

OCGA § 24-4-403 ("Rule 403") provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Further, under Rule 404 (b),

> extrinsic act evidence may be admitted if a three-part test is met: (1) the evidence is relevant to an issue in the case other than the defendant's character, (2) the probative value is not substantially outweighed by the danger of unfair prejudice as required by Rule 403, and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the prior act.[22]

---

[22] *Jones v. State*, 301 Ga. 544, 545 (802 SE2d 234) (2017).

"[W]hen an appellate court reviews the admission of Rule 404 (b) evidence and the proper application of the Rule 403 balancing test, the trial court's decision will not be disturbed unless there is a clear abuse of discretion.[23]

Here, the trial court ruled that the State could present evidence that the Appellant was at a party in a residence on Millstone Manor when he was found in a child's bedroom with the lights off and was forced to leave the residence. The trial court ruled, however, that "[t]here will be no discussion of [the Appellant's] pants being down or of any sexual activity that may or may not have occurred while he was in that bedroom."

(a) In this case, the trial court ruled that the extrinsic evidence was admissible to show the Appellant's intent. Under the first prong of the Rule 404 (b) admissibility test,

> a defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404 (b) evidence absent affirmative steps by the defendant to remove intent as an issue. Where the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses. Thus, where the state of mind

---

[23] Id. at 548 (2).

16

required for the charged and extrinsic offenses is the same, the first prong of the Rule 404 (b) test is satisfied.[24]

The record shows that the Appellant pled not guilty to the charges in this case and maintained his innocence throughout the trial, therefore making intent a material issue, and he did not affirmatively attempt to remove the issue from the case.[25] Because the Appellant's actions at the Millstone Manor residence (specifically, entering a five-year-old girl's bedroom without authority) involved the same mental state as the Appellant allegedly had when he entered an eleven-year-old and twelve-year-old girls' bedroom without permission at the Gees Mill Road residence, the evidence from the Millstone Manor residence was relevant to establish intent.[26]

---

[24] *Bradshaw v. State*, 296 Ga. 650, 656-657 (3) (769 SE2d 892) (2015) (punctuation omitted), (quoting *United States v. Edouard*, 485 F3d 1324, 1345 (11th Cir. 2007)).

[25] See *Silvey v. State*, 335 Ga. App. 383, 387 (1) (a) (780 SE2d 708) (2015) (In a Rule 404 (b) challenge, a defendant's not guilty plea to burglary charges resulted in making intent a material issue, and he did not affirmatively seek to remove the issue from the case.).

[26] See *Silvey*, 335 Ga. App. at 387 (1) (a) (intent shown under the first prong of the Rule 404 (b) admissibility test; defendant's actions in committing burglary and pawning the stolen item involved the same mental state as burglarizing a home to obtain jewelry to sell for cash).

(b) In addressing the second prong of the test, we apply the balancing test under OCGA § 24-4-403.[27] "Rule 404 (b) is a rule of inclusion and Rule 403 is an extraordinary exception to that inclusivity."[28] Further,

> [a]n appellate court will examine whether the trial court properly considered all the circumstances surrounding the extrinsic act evidence, including the similarities between the charged act and the extrinsic act, the remoteness in time between the charged act and the extrinsic act, and the prosecution's need for the extrinsic act evidence.[29]

Here, within an hour after being escorted out of a five-year-old girl's bedroom at the Millstone Manor home, the Appellant was found in the bedroom of eleven-year-old and twelve-year-old girls at the Gees Mill Road residence. Further, the two residences are a short distance from each other. Based on the foregoing, we find no clear abuse of the trial court's discretion in determining that the probative value of the evidence that the Appellant unlawfully entered the five-year-old's darkened

---

[27] See *Jones*, 301 Ga. at 545.

[28] *State v. Atkins*, 304 Ga. 413, 423 (2) (c) (819 SE2d 28) (2018).

[29] *Jones*, 301 Ga. at 548 (2).

bedroom shortly before he committed a similar offense at the nearby home on Gees Mill Road was not substantially outweighed by the danger of unfair prejudice.[30]

(c) Under the third prong of the test, there must be "sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the prior act."[31] At the trial on the instant charges, the Millstone Manor homeowner testified that he had found the Appellant in his young daughter's unlit bedroom and promptly escorted him off his property. Based on the foregoing, there was sufficient proof for the jury to find by a preponderance of the evidence that the Appellant committed the prior act.[32]

Accordingly, the trial court did not abuse its discretion in admitting the evidence at issue.

*Judgment affirmed. Miller, P. J., and Rickman, J., concur.*

---

[30] See *Olds v. State*, 299 Ga. 65, 75-76 (2) (786 SE2d 633) (2016) (Under the second prong of the Rule 404 (b) admissibility test, the probative value rests, among other things, on the marginal worth of the evidence and on the need for that evidence.).

[31] *Jones*, 301 Ga. at 545.

[32] See id.