**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 26, 2020**

# In the Court of Appeals of Georgia

A20A0719. FOFANAH v. THE STATE.                                           DO-026 C

DOYLE, Presiding Judge.

Following his convictions for driving under the influence to the extent it was less safe to do so ("DUI less safe"),[1] driving under the influence with an unlawful alcohol concentration ("DUI per se"),[2] and failure to maintain lane,[3] Sheikh Abusai Fofanah appealed the denial of his motion for new trial, arguing that the trial court erred by denying his motion to suppress and admitting the results of his breath test.[4] In a per curiam decision, this Court vacated the trial court's order and remanded the

---

[1] OCGA § 40-6-391 (a) (1).

[2] OCGA § 40-6-391 (a) (5).

[3] OCGA § 40-6-48 (1).

[4] See *Fofanah v. State*, Case No. A19A0787, decided Aug. 15, 2019 (unpublished opinion).

case for the trial court to reconsider Fofanah's argument in light of the Supreme Court of Georgia's recent decisions in *Elliot v. State* [5] and *Olevik v. State*.[6] Following remand, the trial court entered an order denying Fofanah's motion to suppress his breath test. Fofanah appeals, and for the reasons that follow, we affirm.

As summarized in our prior decision in this case, the record below

shows that in March 2014, a concerned citizen called the police after allegedly observing a person driving erratically. A deputy who was dispatched to the area observed Fofanah failing to maintain his lane of travel. The deputy initiated a traffic stop. After making contact with Fofanah, the deputy smelled a strong odor of alcohol emanating from inside the car. The deputy asked Fofanah if he had been drinking. Fofanah replied that he had consumed a drink containing alcohol earlier.

The deputy asked Fofanah to exit the vehicle. While exiting the vehicle, Fofanah held onto the vehicle for support and "stumbled a bit." A second officer arrived on the scene and performed the horizontal gaze nystagmus ("HGN") test on Fofanah. Based on his observations of Fofanah, including Fofanah's failure to maintain lane, the odor of alcohol, Fofanah's admission that he had been drinking, his unsteadiness on his feet[,] and the results of the HGN test, the deputy arrested Fofanah. The deputy read to Fofanah the implied consent notice for

[5] 305 Ga. 179 (824 SE2d 265) (2019).

[6] 302 Ga. 228 (806 SE2d 505) (2017).

suspects 21 and over, asking if he would submit to a state-administered test of his breath.[7] Fofanah answered affirmatively. The officers transported Fofanah to a detention center to perform the breath test on an Intoxilyzer 5000 machine. Fofanah's breath test registered an alcohol concentration of .216 grams, which was above the legal limit of .08 grams.[8]

Prior to trial, Fofanah moved to suppress the results from the breath test, arguing that his consent to the test was invalid because he was not advised of his *Miranda*[9] rights and because the implied consent notice unduly influenced his decision by informing him that his refusal to consent would have negative consequences.[10] After considering the totality of the circumstances, the trial court denied the motion to suppress.[11]

After the jury trial and following his conviction on all three counts, Fofanah moved for a new trial, which motion the trial court denied, and he appealed.[12] In an

[7] See OCGA § 40-5-67.1 (b) (2) (2014).

[8] *Fofanah*, Case No. A19A0787 at 2-3, citing OCGA § 40-6-391 (a) (5).

[9] See *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

[10] See *Fofanah*, Case No. A19A0787 at 3.

[11] See id. at 3

[12] See id. at 1.

unpublished decision, this Court rejected Fofanah's arguments that the trial court erred by denying his motion to suppress because (1) the arresting officers failed to give him a *Miranda* warning before asking him to submit to the breath test[13]; and (2) the language of the implied consent notice is unconstitutionally coercive.[14] This Court did, however, vacate the trial court's ruling on his suppression argument with regard to his "as-applied" challenge to the implied consent notice and remanded the case for the trial court to reconsider that argument in light of the Supreme Court of Georgia's decisions in *Olevik* and *Elliott*, which had not been decided when the trial court ruled on Fofanah's motion.[15]

Following remand, the trial court entered an order concluding that Fofanah "voluntarily consented to the breath test," noting his unequivocal agreement to submit to testing, his ability to comprehend the conversation with the officers, his coherent

---

[13] See id. at 4-6 (1), citing *State v. Turnquest*, 305 Ga. 758, 760-761 (3) (827 SE2d 865) (2019) (holding that neither the Georgia Constitution nor Georgia law "require[s] law enforcement to warn persons in custody of any constitutional rights before asking them to submit to a breath test").

[14] See *Fofanah*, Case No. A19A0787 at 7-8 (2) (a), citing *Olevik*, 302 Ga. at 246-250 (3) (a) (holding that the implied consent notice, standing alone, is not per se coercive).

[15] See *Fofanah*, Case No. A19A0787 at 8-10.

responses to questioning, and his ability to follow instructions. The court also found that the officers were not threatening, yelling, or hostile, nor did they make any threats or promises to obtain Fofanah's consent. The court acknowledged that the officers' advisement to Fofanah that a refusal to submit to the test could be offered into evidence against him at trial was misleading, but nevertheless concluded that the

> advisement does not render the consent in this case involuntary. [Fofanah] did not appear frightened or nervous, and even after being advised of his right to independent tests, made no request for anything other than the breath test given, a minimal intrusion on [his] liberty. It is also notable that he did not once, either at the scene or on the drive to the Sheriff's office, attempt to withdraw his consent to this testing.

Fofanah appeals, arguing that the trial court erred by admitting the results of the breath test because he did not voluntarily consent after being read the defective implied consent warning. We disagree.

> Determining the voluntariness of (or lack of compulsion surrounding) a defendant's incriminating statement or act involves considerations similar to those employed in determining whether a defendant voluntarily consented to a search, including such factors as the age of the accused, his education, his intelligence, the length of detention, whether the accused was advised of his constitutional rights, the prolonged nature of questioning, the use of physical punishment, and

5

the psychological impact of all these factors on the accused. *In determining voluntariness, no single factor is controlling.*[16]

"Just as the voluntariness of consent to search includes an assessment of the psychological impact of all the factors on a defendant, a significant factor in a due process inquiry is whether a deceptive police practice caused a defendant to confess or provide an incriminating statement."[17] Furthermore, "the state of the accused's mind, and the failure of the police to advise the accused of his rights, [are] certainly factors to be evaluated in assessing the 'voluntariness' of an accused's responses, [but] they [are] not in and of themselves determinative."[18]

Here, following remand, the trial court considered the impact of the misleading informed consent notice as instructed by this Court and concluded that, given the totality of the circumstances, Fofanah's consent was voluntary.

---

[16] (Punctuation omitted; emphasis supplied.) *Leggett v. State*, ___ Ga. App. ___, ___ (2) (Case No. A20A0173), quoting *Olevik*, 302 Ga. at 251 (3) (b).

[17] *Olevik*, 302 Ga. at 251 (3) (b).

[18] (Punctuation omitted.) Id. at 251-252 (3) (b), quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (93 SCt 2041, 36 LE2d 854) (1973).

Under the standard set forth in *Hughes [v. State*[19]], this Court must accept the trial court's factual findings unless clearly erroneous and must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court. Based on this standard of review [and the facts in this case], we cannot say that the evidence demanded a finding contrary to the trial court's ruling[,] and thus we find no abuse of discretion by the trial court in [denying Fofanah's] motion to suppress.[20]

*Judgment affirmed. McFadden, C. J., and Hodges, J., concur*.

---

[19] 296 Ga. 744, 746 (1) (770 SE2d 636) (2015) (holding that when reviewing a ruling on a motion to suppress: "First, an appellate court generally must accept those findings unless they are clearly erroneous. Second, an appellate court must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court. And third, an appellate court generally must limit its consideration of the disputed facts to those expressly found by the trial court.").

[20] (Citations and punctuation omitted.) *State v. Williams*, 337 Ga. App. 791, 798 (788 SE2d 860) (2016), citing *Kendrick v. State*, 335 Ga. App. 766, 772 (782 SE2d 842) (2016) (affirming the denial of a motion to suppress, "affording appropriate deference to the trial court that heard the testimony first-hand"); *State v. Durrence*, 295 Ga. App. 216, 218 (671 SE2d 261) (2008) ("[I]n the absence of evidence of record demanding a finding contrary to the judge's determination, the appellate court will not reverse the ruling sustaining a motion to suppress.").